IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **MARK ORTEGA,** individually and on behalf of all similarly situated, | § § § | |
| Plaintiff, | § § | CIVIL ACTION No. 5:24-cv-487 |
| v. | § § | |
| **SIENNA MARKETING & CONSULTING, INC.** a New York Corporation | § § § | |
| Defendant. | § § § | |

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM UNDER FED. R. CIV P. 12(b)(6)**

Defendant Sienna Marketing & Consulting, Inc. ("Sienna" or "Defendant"), through its undersigned counsel, hereby moves that Plaintiff Mark Ortega's ("Plaintiff" or "Ortega") First Amended Class Action Complaint, ECF No. 9, be dismissed with prejudice under Rule 12(b)(6) for failure to state a claim.

## I. INTRODUCTION

Ortega filed this lawsuit on May 13, 2024, alleging that Sienna made an unsolicited phone call and sent ten text messages on or around March 7-8, 2024. Based on this, Ortega alleges violations of the Telephone Consumer Protection Act ("TCPA"), the National Do Not Call Registry ("NDNC") and the implementing regulation (47 C.F.R. § 64.1200), as well as the Texas Telephone Solicitation Act ("TTSA").

After Ortega filed his Complaint, Sienna notified him of the deficiencies on which Sienna planned to base this Motion. Notably, Sienna told Ortega he stated facts that foreclosed any claim under Section 227(b) of the TCPA. To avoid the dismissal of his claim and to create genuine issues

of fact when none exist, Ortega removed the fatal facts from his Complaint.

Despite his new story in the First Amended Complaint[1], (ECF No. 9), Ortega's claims still fail as matter of law. Throughout the First Amended Complaint, Ortega pleads inconsistent and insufficient facts for his claims, and, in bad faith, removed facts he plead in the original Complaint, (ECF No. 1), to manufacture the appearance of a genuine issue of fact and avoid dismissal. This was wrong and the First Amended Complaint should now be dismissed, with prejudice.

## II. PLAINTIFF'S *FIRST AMENDED COMPLAINT*[2]

Ortega alleges he received ten communications on March 7, 2024, and March 8, 2024, from Sienna—including nine text messages and a phone call to his cell phone. ECF No. 9 ¶¶ 20-29. Ortega states that he uses the cell phone for residential purposes, which include "personal calls, text messaging with family, and managing his personal affairs." *Id*. ¶¶ 14-15. Upon answering the alleged call from Sienna, Ortega pleads that "a customer caller asked Ortega questions before transferring him to an agent of Defendant Sienna." *Id.* ¶ 25. Ortega pleads that the call did not have Caller ID and the caller did not identify themself at the start of the call, so Ortega "went through the telemarketing process so he could identify the company." *Id.* ¶ 26. After hanging up the call, Ortega alleges he received a text message that same day from a Sienna representative, Vincent Palazzo, who identified himself and provided his contact information. *Id.* ¶ 27. Ortega claims he replied to the initial text, requesting that the representative stop contacting him. *Id.* Following his request to stop receiving texts, Ortega alleges the following day he received a few final texts in

---

[1] On July 12, 2024, Sienna conferred with Ortega regarding the deficiencies in *Plaintiff's First Amended Class Action Complaint*. See Exhibit A. On July 19, 2024, Ortega filed an *Advisory of Intent to Amend Class Action Complaint* (ECF No. 10). Ortega, however, failed to timely file another amended complaint within seven days of the filing of the Advisory, as required by this Court's rules. Therefore, Sienna is responding to *Plaintiff's First Amended Class Action Complaint* (ECF No. 9). For comparison purposes, a true and correct copy of the initial Complaint is attached hereto as Exhibit B.

[2] For the purposes of Sienna's arguments in this Motion, it accepts Ortega's claims as true unless otherwise stated.

"rapid succession," including one that said, "I'm confused" and "Did we not talk about funding for inventory?" from a representative. *Id.* ¶¶ 30. Crucially, the Amended Complaint omits the previously alleged fact that Sienna uses lead generating services to contact potential clients. ECF No. 1 ¶ 18.

### III. ARGUMENT

**A. Legal Standard for Failure to State a Claim Under Rule 12(b)(6)**

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." For a complaint to survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 555 (2007). A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Twombly*, 550 U.S., at 556. "Determining whether a complaint states a plausible claim for relief [is] . . . a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S., at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint . . . has not show[n] [] 'that the pleader is entitled to relief.'" *Id.* (quoting FED.R.CIV. P. 8(a)(2)).

Although the court must accept all the allegations contained in a complaint as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 663. Additionally, "under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings." *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). However, a court may take judicial notice

of matters of public record. *Hunsinger v. Offer,* No. 3:21-CV-2846-BH, 2022 WL 18143951 at *2 (N.D. Tex. Dec. 7, 2022), *report and recommendation adopted*, No. 3:21-CV-2846-BH, 2023 WL 122649 (N.D. Tex. Jan. 6, 2023); *Cinel v. Connick*, 15 F.3d 1338, 1343 (1994) (stating disclosing materials to those who already know the details is not an invasion of privacy).

**B. Plaintiff Amended his Pleadings in Bad Faith to Avoid Dismissal of the Autodial Claims.**

Ortega's autodialer claim (Count II) fails because he amended his pleadings in bad faith to omit fatal facts from his previous pleading. Alternatively, despite several attempts to do so, his autodial claim fails because he does not allege sufficient facts to support his claim that Sienna used an automatic telephone dialing system ("ATDS" or "autodialer") to make contact with Ortega.

Subsection 227(b) of the TCPA prohibits the use of an ATDS to make a call and the use of an artificial or prerecorded voice to deliver a message to the called party without the party's express consent. 47 U.S.C. § 227(b)(1). An ATDS must randomly or sequentially generate telephone numbers and dial them to fall under the purview if the TCPA. *Facebook v. Duguid*, 592 U.S. 395, 396 (2021). Conversely, a "preproduced list that is not sequentially generated or stored *cannot be considered an ATDS under the TCPA.*" *Atkinson v. Pro Custom Solar LLC*, No. 21-00178, 2022 WL 4071998, at *7 (W.D. Tex. Sept. 1, 2022) (citing *Meier v. Allied Interstate LLC*, 2022 WL 171933, at *1 (9th Cir. Jan. 19, 2022)) (emphasis added). Critically, preproduced phone numbers obtained from a "lead services" generator used to identify specific individuals based on their stated interest in a good or service—like the one Ortega claimed Sienna used to identify Ortega in the original Complaint, ECF No. 1 ¶ 18—do *not* fall within the definition of an ATDS. *See, e.g., Samataro v. Keller Williams Realty*, No. 1:21-CV-76-R, 2021 U.S. Dist. LEXIS 207058, at *15 (W.D. Tex. Sep. 27, 2021) ("This Court adopts this understanding of the decision in *Facebook* [*v. Duguid,*] and dismisses Plaintiffs' second claim with prejudice because it is based on calls made

4

to specific individuals in connection with their property listings, whose numbers were compiled into a preproduced list of phone numbers, as opposed to generated randomly by an autodialer.").

Ortega claims that Sienna violated the TCPA by initiating a telephone call using an ATDS, a claim he pled himself out of in his original Complaint. When amending a complaint, attempts "to artfully draft around" a motion to dismiss demonstrate bad faith and improper efforts to avoid dismissal. *Travis v. City of Grand Prairie*, 2015 U.S. Dist. LEXIS 188307, at *20-21 (N.D. Tex. Aug. 6, 2015) (emphasis added), *aff'd sub nom. Travis v. City of Grand Prairie, Texas*, 654 F. App'x 161 (5th Cir. 2016). Amendments to the pleadings must not omit information in order to raise an issue of fact. *Id*. Further, substantive amendments, not simple corrections, to the pleadings that alter the theory of liability support a finding of bad faith. *Quinn v. Scantech Identification Beams Sys., LLC*, 2017 U.S. Dist. LEXIS 73307, at *9-10 (W.D. Tex. May 15, 2017).

In the original Complaint, Ortega plead that Sienna used lead generator services to make initial contact with him. Sienna admitted to obtaining Ortega's phone number from a lead generator service provider in the Answer to the original Complaint. ECF No. 8 ¶ 18. After Sienna informed Ortega in the pre-motion conference that the use of lead services contradicts an autodial claim, Ortega inconspicuously *removed that fact* and tried to allege additional facts suggesting the use of an ATDS. Ortega also changed his description of the phone call from hearing a "pause and audible click," ECF No. 1 ¶¶ 23-24, to instead saying he heard a "distinct pause and delay." ECF No. 9 ¶ 24. By altering the facts surrounding the phone call, Ortega not only weakens the claim, but also tries to create a fact issue to avoid dismissal of his autodial claims. Ortega removed and altered key facts in his First Amended Complaint, demonstrating his bad faith effort to draft around the dismissal of his autodial claims. Based on Ortega's bad faith in amending his pleadings, this Court should dismiss his autodial claim with prejudice.

### C. Plaintiff Does Not Allege Sufficient Facts to Support His Autodial Claim

Regardless of Ortega's bad faith amendment of his pleadings, his autodial claim separately fails because he does not allege sufficient facts to suggest that Sienna used an ATDS to make the phone call.

Claims that merely follow the language of the statute and do not allege additional facts do not survive the motion to dismiss phase. *Speidel v. JP Morgan Chase & Co.*, No. 13-852, 2014 WL 582881, at *2 (M.D. Fla. Feb. 13, 2014). A plaintiff must allege facts that reasonably suggest a telemarketer used an ATDS. *Callier v. MultiPlan, Inc.*, No. EP-20-CV-00318-FM, 2021 WL 8053527, at *17 (W.D. Tex. Aug. 26, 2021). In some cases, a plaintiff can sufficiently allege the use of an ATDS with "dead airtime" and characterized by "several seconds of silence," but the facts must engage with the material question of whether the call underlying the claim is attributable to an ATDS. *Id*. at *17-18. A bare allegation that "silence and then hearing a live person" on the other end of the phone signifies a "predictive dialer system in operation," is mere speculation and does not support any inference that an ATDS system was used. *Hunsinger v. Dynata LLC*, No. 3:22-CV-00136-G-BT, 2023 WL 2377481, at *7 (N.D. Tex. Feb. 7, 2023), *report and recommendation adopted,* No. 3:22-CV-0136-G-BT, 2023 WL 2386710 (N.D. Tex. Mar. 4, 2023); *compare France v. Ditech Fin., LLC*, No. 817CV3038T24MAP, 2018 WL 1695405, at *7 (M.D. Fla. Apr. 6, 2018) (finding that a period of several seconds of silence and a mechanical clicking noise could indicate the use of an ATDS).

Here, Ortega only alleges a distinct pause and delay before speaking to a live representative. ECF No. 9 ¶ 24. He then tries to equate that pause with evidence an ATDS system was at work. *Id*. Ortega's claim, without any further support, is no more than a bare allegation and

does not support an inference that Sienna used an ATDS. Since Ortega makes no more than a conclusory statement that Sienna used an ATDS to make the call, his claim fails as a matter of law.

Further, Ortega does not allege any facts to support a claim that Sienna used an ATDS to send any text messages. In determining whether a company used an ATDS to send a text message, courts examine the content of the message, the context in which it was received, and the existence of similar messages to raise an inference that an ATDS was used. *Hunsinger v. Alpha Cash Buyers, LLC*, No. 3:21-CV-1598-D, 2022 WL 562761, at *4 (N.D. Tex. Feb. 24, 2022). Individualized text messages with a personal nature do not support an inference that a sender used an ATDS. *Id* at *5. Here, Ortega provides a screenshot of the text messages, which show that the agent addressed Ortega *by name* and discussed the prior conversation they had over the phone. ECF No. 9 ¶ 33. None of the text messages support any claim that Sienna used an ATDS to contact Ortega.

**D. Plaintiff Fails to State an Internal Do-Not-Call Claim Under Section 227(b) of the TCPA**

Ortega's claim that Sienna did not properly place him on Sienna's internal do-not-call list (Count III) must also fail. Subsection 64.1200(d) of the implementing regulations of the TCPA requires an entity to institute procedures for maintaining a list of persons who request not to receive telemarketing calls from the entity prior to making a call for telemarketing purposes. 47 C.F.R. § 64.1200(d) (2024). The entity must have a written policy that is available upon demand, train personnel on the procedures, record the do-not-call requests and honor the requests within 30 days, identify the individual caller and any affiliated parties, and maintain a do-not-call list. *Id*. § 64.1200(d)(1)-(6). Companies are permitted a reasonable amount of time, up to 30 days, to honor a person's do-not-call request. *Id*. § 64.1200(d)(3); *Simmons v. Charter Commc'ns, Inc.*, 222 F. Supp. 3d 121, 130 (D. Conn. 2016), *aff'd*, 686 F. App'x 48 (2d Cir. 2017) ("Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a

residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request.").

Ortega pleads Sienna first contacted him on March 7, 2024, and that he requested Sienna no longer contact him on that same day. ECF No. 9 ¶ 27. After his request, Ortega claims he received a handful of texts, all sent within 24 hours of the request. *Id.* ¶¶ 28-33. The texts express confusion and attempt to clarify whether Ortega was the person the representative previously spoke to about funding. *Id.* ¶ 33. Even if the texts were sent after Ortega's request for no further contact, the texts were sent within 24 hours of the request—well within the permitted time for entities to honor such requests. Ortega's internal do-not-call claim thus fails as a matter of law because Sienna had up to 30 days to honor any such request.

Separately, Ortega's internal do-not-call claim fails because it merely recites the required elements of Subsection 64.1200(d) and then alleges Sienna did not institute internal do-not-call procedures based on Ortega's receipt of a call. As stated in *Iqbal*, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S., at 663. A pleading "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678.

Here, Ortega's First Amended Complaint lists out the requirements of Subsection 64.1200(d), as well as states Ortega's belief that Sienna "has the capability of immediately complying with the request," but does not provide any evidence that Sienna does not have procedures for an internal do-not-call list. Ortega's belief about the capabilities of Sienna to "immediately" comply with the request does not erase the 30-day grace period Sienna has to honor requests. Additionally, Ortega fails to allege he made a demand to see the written policy, so he provides no basis for his accusation that Sienna does not have a written policy. Ortega's recital of

the requirements of Subsection 64.1200 does no more than make the unadorned, the-defendant-unlawfully-harmed-me accusation that *Iqbal* warned against. Since Ortega offers no more than the language of the statute for his do-not-call claims, his claims must fail as a matter of law.

**E.  The TCPA Does Not Cover Business-to-Business Calls.**

Ortega's do-not-call claim under the TCPA (Count III) fails because Ortega holds the phone number out to the public as a business number. The TCPA do-not-call protections do not apply to business-to-business calls. 16 C.F.R. § 310.6(b)(7). Specifically, the Federal Trade Commission does not consider calls made to business numbers on the National Do Not Call Registry ("NDNC") violations of the rules implemented under the TCPA. *Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd. 9779, 9785 (June 17, 2008).  Even when a telephone number is used for both residential and business purposes, if the subscriber of a telephone number holds out such "number to the general public as a business line, the line should not be considered 'residential' for the purposes of the TCPA—even if it is registered as 'residential' with the telephone company." *Bank v. Indep. Energy Grp. LLC*, No. 12-CV-1369, 2014 WL 4954618, at *3 (E.D.N.Y. Oct. 2, 2014); *see also Worsham v. Disc. Power, Inc.,* No. CV RDB-20-0008, 2021 WL 50922, at *4 (D. Md. Jan. 6, 2021), *amended*, No. CV RDB-20-0008, 2021 WL 1390310 (D. Md. Apr. 13, 2021) (holding that a mixed use telephone number is a business number even if it is used primarily for residential purposes); *Shelton v. Target Advance LLC*, No. CV 18-2070, 2019 WL 1641353, at *5 (E.D. Pa. Apr. 16, 2019) (holding that plaintiff could not bring claims under the NDNC prohibition because the alleged residential number was for business use).

Although courts must accept pleadings as true, courts may also take judicial notice of matters of public record. *Cinel*, 15 F.3d at 1343. When deciding a motion to dismiss, courts may consider facts that "can be accurately determined from sources whose accuracy cannot be

9

reasonably questioned." Fed. R. Evid. 201. In the First Amended Complaint, Ortega refers to the phone number as his residential number which he uses for primarily for "personal calls, text messaging with family and friends, and managing his personal affairs." ECF. No. 9 ¶¶ 13-15.

Public records reveal Ortega uses the phone number in the First Amended Complaint, ECF No. 9 ¶ 13, for business purposes. Specifically, Ortega holds out that number with his business, Mao Real Estate, LLC.[3] By associating his phone number with his real estate business, Ortega holds the number out to the public as a *business* phone number—thus foreclosing TCPA claims. *Bank*, 2014 WL 4954618, at *3; *Shelton*, 2019 WL 1641353, at *5. Even if Ortega does allegedly use the number for both residential and business purposes, that too is insufficient to save his claim. *Worsham*, 2021 WL 50922, at *4. Further, Sienna directed the call to the business use of the number to offer Ortega financing services for his business. ECF No. 9 ¶ 33. The offer via text to help secure funding for inventory demonstrates the communications were directed to Ortega's business use of the number and not for a residential subscriber. *Id*. Because Ortega holds out his number as a business number, he cannot bring a TCPA do-not-call claim as a matter of law.

**F. Plaintiff cannot establish a violation of the TTSA because it cannot establish a violation of the TCPA**

As explained above, Ortega cannot establish a claim under the TCPA. This failure also prevents Ortega from establishing a claim under the TTSA. The TTSA provides a state cause of

---

[3] *See* Texas Secretary of State (SoS) record for MAO Real Estate LLC, listing Plaintiff Mark Anthony Ortega as "Managing Member" and "Director" at Exhibit C. This Court has repeatedly observed it can take judicial notice of such Texas SoS records on a motion to dismiss. *Gomez v. Niemann & Heyer, LLP*, No. 1:16-CV-119 RP, 2016 U.S. Dist. LEXIS 82443, at *46 (W.D. Tex. June 24, 2016) ("Court therefore takes judicial notice of the Texas Secretary of State records attached to Defendant's Motion to Dismiss.") (collecting cases). According to the Texas SoS record for MAO Real Estate, LLC, this entity's address is PO Box 702099, San Antonio, TX 78270. A *LexisNexis Public Records: Locate a Business* search for Plaintiff's phone number returns item No. 7—*i.e.*, MAO Real Estate LLC, with the same phone number. This too can be considered here. *See Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (approving judicial notice of public records by district court reviewing motion to dismiss). A true and correct copy of this LexisNexis public records search is attached as Exhibit D.

action for violations of the TCPA. *See* Tex. Bus. & Com. Code §305.053. "'If no violation of the TCPA exists, there is no violation of' Section 305.053." *Shields v. Dick*, No. 3:20-CV-00018, 2020 WL 5522991, at *3 (S.D. Tex. July 9, 2020) (*quoting Cherkaoui v. Santander Consumer USA, Inc.*, 32 F. Supp. 3d 811, 815 (S.D. Tex. 2014)). As Ortega has failed to plead a cause of action under the TCPA, his claims under the TTSA must also fail.

**G.  Chapter 302 of the Texas Business and Commerce Code Does Not Include Text Messages**

Ortega's claim for damages under Chapter 302 of the Texas Business and Commerce Code fails because the registration requirement of Chapter 302 does not apply to text messages

The Texas Business and Commerce Code prohibits a seller from making "a telephone solicitation unless the seller holds a registration certificate" from the office of the Secretary of State. *See* Tex. Bus. & Com. Code § 302.101. Chapter 302 defines "telephone solicitation" as a "telephone call a seller or salesperson initiates to induce a person to purchase, rent, claim, or receive an item." *Id.* § 302.001.

In *Powers*, the court held Chapter 302 did not include text messages because, in 2009, when the Texas Legislature amended the definition of call in Chapter 304 to include text messages, the "Legislature did *not* amend the definition in Chapter 302." *Powers v. One Techs., LLC*, No. 3:21-CV-2091, 2022 WL 299288, *3 (N.D. Tex. July 28, 2022) (emphasis in original). Further, *Powers* noted Chapter 304 includes a header labeled "Definitions. In this chapter," which indicates the Texas Legislature confined the definitions in Chapter 304 to just that chapter. *Id*. Based on this reasoning, *Powers* held Chapter 302 does not apply to text messages. *Id*. Since text messages do not fall within the scope of Chapter 302, Ortega cannot bring claims under Chapter 302 for the alleged text messages sent by Sienna.

## IV. CONCLUSION

For the above reasons, Defendant Sienna Marketing & Consulting respectfully requests that this Court grant the instant Motion to Dismiss Plaintiff's Complaint in its entirety, with prejudice.

Respectfully submitted,

By: */s/ Robert Scott*
  Robert Scott
  State Bar No. 17911800
  Bobbye Pyke (court admission application filed)
  State Bar No. 24123274
  Jeffrey N. Rosenthal (*pro hac vice* forthcoming)
  Pennsylvania Bar No. 209334
  BLANK ROME LLP
  717 Texas Avenue, Suite 1400
  Houston, Texas 77002
  (713) 228-6601
  (713) 228-6605 (fax)
  bobbye.pyke@blankrome.com
  jeffrey.rosenthal@blankrome.com
  harrison.brown@blankrome.com

**ATTORNEYS FOR DEFENDANT SIENNA MARKETING & CONSULTING, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2024, a true and correct copy of the foregoing instrument was served on counsel for all parties to this action through the Court's CM/ECF E-file delivery service.

/s/ Robert Scott
Robert Scott

## CERTIFICATE OF CONFERENCE

I hereby certify that on July 12, 2024, Sienna conferred with Ortega's counsel concerning the deficiencies in *Plaintiff's First Amended Class Action Compliant*, and the expected basis for Sienna's Motion to Dismiss under Rule 12(b)(6) (*See* Exhibit A). On July 19, 2024, Ortega filed an *Advisory of Intent to Amend Class Action Complaint* (*See* ECF No. 10). Ortega has failed to timely file an amended complaint within seven days of filing the Advisory as required by this Court's rules.

/s/ Robert Scott
Robert Scott