# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | |
|---|---|
| **MARK ORTEGA,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>**SIENNA MARKETING & CONSULTING, INC.** a New York Corporation<br><br>*Defendant,* | Case No. 5:24-cv-487-OLG |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT UNDER RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

## Introduction and Background

Plaintiff, Mark Ortega, ("Plaintiff") alleges that he received a series of unsolicited telemarketing calls and text messages from Sienna Marketing & Consulting, Inc. ("Defendant" or "Sienna") promoting their financing services. These communications, delivered to Plaintiff's cellular telephone number, were made without his prior express consent and despite his phone number being registered on the National Do Not Call Registry ("DNC Registry"). ECF No. 9 (First Amended Complaint, "FAC") at ¶¶ 16, 20, 22.

When Plaintiff answered the initial call and attempted to identify the caller and the company they represented, the caller refused to provide this information. FAC ¶¶ 25-26. Frustrated by the telemarketing calls, Plaintiff feigned interest in Defendant's services to obtain its business information. Once Sienna sent its business information to Plaintiff, Plaintiff explicitly informed Sienna that he was not interested in their services and was on the DNC Registry. FAC ¶ 27.

1

Despite this clear revocation of consent, Plaintiff continued to receive text messages from Sienna encouraging him to do business with them. FAC ¶¶ 29-31. In response to this barrage of unsolicited communications and based on his investigation revealing Sienna as the entity behind the calls, Plaintiff filed this class action complaint alleging violations of the Telephone Consumer Protection Act ("TCPA"), the Texas Telephone Solicitation Act ("TTSA"), and the Texas Business and Commerce Code.

Sienna now seeks to dismiss Plaintiff's claims, arguing, among other things, that Plaintiff's phone number is a business line not protected by the TCPA, that Plaintiff lacks standing to bring these claims, and that text messages are not covered by certain provisions of the Texas Business and Commerce Code. As demonstrated below, Sienna's arguments are without merit, and Plaintiff has adequately pled viable claims under both federal and state law.

## Factual Background

Plaintiff, Mark Ortega, is an individual residing in this District. FAC ¶ 12. He primarily uses his cell phone for personal use, including personal calls, text messaging with family and friends, and managing his personal affairs. FAC ¶¶ 14-15. To avoid unwanted telemarketing calls, Plaintiff registered his number with the DNC Registry on January 23, 2012. FAC ¶ 16. Despite this registration, Plaintiff began receiving unsolicited communications from Defendant. FAC ¶ 20. On or around March 7, 2024, Plaintiff received an unsolicited telemarketing call from Defendant on his cell phone. FAC ¶ 22. When Plaintiff answered the call, there was a distinct pause and delay before a live representative responded, suggesting the use of an automated dialing system. FAC ¶¶ 22-23. During the call, a customer service representative asked Plaintiff questions before transferring him to an agent of Defendant. FAC ¶ 25. Neither the initial caller nor the Caller ID

revealed Defendant's identity, forcing Plaintiff to engage in the telemarketing process to identify the company. FAC ¶ 26.

Following the call, Plaintiff received a text message from Defendant's Agent, Vincent Palazzo, with his contact information. FAC ¶ 27. Plaintiff responded by explicitly stating, "Stop I'm not interest and on the do not call list. Don't contact me anymore." FAC ¶ 27. Plaintiff believes that Defendant had the capability to immediately comply with this do-not-call request. FAC ¶ 28. On March 8, 2024, just one day after Plaintiff revoked consent to be contacted, Defendant's Agent sent nine text messages to Plaintiff's cell phone. FAC ¶ 29. The first five messages, sent in rapid succession, attempted to downplay Plaintiff's prior revocation of consent. FAC ¶ 30. When Plaintiff did not respond, Defendant's Agent sent four more messages approximately an hour later, continuing to solicit Plaintiff's business. FAC ¶ 31. None of the messages acknowledged Plaintiff's revocation of consent, demonstrating Defendant's blatant disregard for Plaintiff's request to cease contact. FAC ¶ 32.

In response, Plaintiff filed his class action complaint against Defendant. Defendant filed an answer to the original Complaint, an answer to the Amended Complaint and subsequently filed a Motion to Dismiss for Failure to State a Claim. *See* ECF 8, 11, 12.

**Argument**

## I. Procedural Standard.

As this Court explained in *Centex Homes v. Arias & Assocs.*, "Rule 8(a)(2) of the Federal Rules of Civil Procedure sets out the fundamental pleading standard for civil litigation and governs all claims in a civil suit, requiring 'a short plain statement of the claim showing that the pleader is entitled to relief.'" *Centex Homes v. Arias & Assocs.*, No. SA-12-CA-53-OG, 2012 U.S. Dist. LEXIS 193854, at *10 (W.D. Tex. May 18, 2012) (Garcia, J.). "[T]he complaint taken as a whole

3

'must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under <u>some</u> viable legal theory' and a plaintiff's pleading obligation includes the twin requirements of fact-based pleading and plausibility." *Id.* (emphasis in original). This Court added:

> Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must state a claim upon which relief can be granted or the complaint may be dismissed with prejudice as a matter of law. When considering a motion to dismiss for failure to state a claim, the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"

> *Id.* at *10.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The general rule is that courts should consider a motion to dismiss based on the four-corners of the plaintiff's pleadings, not the evidence that Defendants may seek to introduce in response." *Ramos v. Taylor*, No. 1:20-CV-1256-RP, 2022 U.S. Dist. LEXIS 227519, at *10-11 (W.D. Tex. Dec. 18, 2022) (Pitman, J.); *see also Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir. 1994) ("we must accept all well-pleaded facts as true, and we view them in the light most favorable to the plaintiff. We may not look beyond the pleadings. A dismissal will not be affirmed if the allegations support relief on any possible theory.").

## II. Plaintiff's Autodialer Claim is Properly Pled and Sienna's Accusations of Bad Faith are Unfounded

Sienna initiates its Motion to Dismiss by baselessly stating that Plaintiff amended his complaint in bad faith. The record clearly demonstrates that Plaintiff's amendments were made in good faith and for legitimate purposes. Both the original complaint and the FAC allege that Sienna

made unsolicited calls and sent text messages to Plaintiff's cellular phone, violating the TCPA and the TTSA. The FAC simply clarifies certain details surrounding the initial call and removes an unnecessary factual assertion regarding Sienna's use of lead generation services.

Sienna's attempt to equate Plaintiff's amendments with bad faith by highlighting a change from "pause and audible click" to "distinct pause and delay" is a clear attempt to elevate form over substance. Both phrases describe the same fundamental reality: a delay often experienced when a call is connected through an automated dialing system. This minor wording change is immaterial to the core allegations of the FAC and does not alter Plaintiff's legal arguments in any way. Similarly, the omission of Sienna's use of lead generation services in the FAC was not done deceptively, but rather to streamline the pleading and avoid unnecessary factual details that are not dispositive of the ATDS issue.

The case Sienna cites involved targeted calls to specific individuals based on their property listings. *Samataro v. Keller Williams Realty, Inc.*, 2021 U.S. Dist. LEXIS 207058 (W.D. Tex. Sep. 27, 2021). The Court found that these calls did not fall under the TCPA's ATDS definition because the numbers were not randomly or sequentially generated. *Id.* at 15. However, Plaintiff's case is different. Plaintiff alleges that Sienna used an ATDS to call from a stored list, using a random or sequential number generator to select the numbers to dial (FAC ¶ 18). This is precisely the type of system the Supreme Court distinguished from targeted calls in *Facebook, Inc. v.* Duguid, 141 S. Ct. 1163 (2021).

In *Duguid*, the Supreme Court specifically addressed this distinction, noting that the plaintiff's TCPA claim failed because "he did not claim Facebook sent text messages to numbers that were randomly or sequentially generated. *Id.* at 1168. Rather, Facebook argued, "Duguid alleged that Facebook sent targeted, individualized texts to numbers linked to specific accounts."

*Id.* The Court found that this type of targeted communication did not fall within the scope of the TCPA's ATDS definition. Here, however, Plaintiff alleges that Sienna used an ATDS to call from a stored list, using a random or sequential number generator to make its selections, not that Sienna targeted him individually based on specific account information.

Moreover, unlike *Samataro*, *Libby v. Nat'l Republican Senatorial Comm.*, 2021 U.S. Dist. LEXIS 140103 (W.D. Tex. July 27, 2021), offers a more accurate understanding of adequate pleadings for an ATDS claim. In *Libby*, the plaintiff alleged, much like Plaintiff here, that the defendant used an ATDS to call from a stored list, using a random or sequential number generator to select the numbers to dial. The Court found these allegations sufficient to state a plausible claim, even though the defendant might have obtained the numbers on the list from various sources. Critically, the *Libby* court acknowledged that "[a] TCPA claim does not exist whenever someone receives an unwanted call from an automated system; liability is triggered only if the automated system 'us[es] a random or sequential number generator' to store or produce the phone numbers that are called." *Id.* at 7 (quoting *Duguid* at 117). The crucial distinction, therefore, is between targeted calls to specific individuals, like those at issue in *Duguid*, and calls made from a list using random or sequential number generation for selection, like those alleged in *Libby* and in the FAC in this case.

The FAC alleges that Sienna used "dialing technology, which calls phone numbers from a stored list using a random or sequential number generator to select those phone numbers" (FAC ¶ 18). This allegation mirrors the language found sufficient in *Libby*. Thus, the fact that Sienna might have obtained Plaintiff's number from a lead generation service is not dispositive of the ATDS issue and is not necessary to include in the FAC.

Moreover, Sienna's cites to *Quinn v. Scantech Identification Beams Sys., LLC*, 2017 U.S. Dist. LEXIS 73307 (W.D. Tex. May 15, 2017) and *Travis v. City of Grand Prairie*, 2015 U.S. Dist. LEXIS 188307 (N.D. Tex. Aug. 6, 2015). These cases involved plaintiffs who attempted to fundamentally alter their claims through amendment, introducing entirely new legal theories or attempting to conceal previously admitted facts. Here, Plaintiff's core allegations have remained consistent throughout the litigation. The minor wording change regarding the "pause and delay" and the omission of Sienna's possible use of lead services do not alter the fundamental nature of Plaintiff's claims and cannot reasonably be construed as an attempt to "artfully draft around" a motion to dismiss.

Furthermore, the FAC alleges a "distinct pause and delay" before a live representative answered Plaintiff's call (FAC ¶ 23). This "dead air time," as recognized in cases like *Cunningham v. Nationwide Sec. Sols., Inc.*, 2017 U.S. Dist. LEXIS 223796 (N.D. Tex. Nov. 2, 2017), can be sufficient to plead the use of an ATDS. "[C]ourts have noted the difficulty a plaintiff faces in knowing the type of calling system used without the benefit of discovery and found that courts can rely on details about the call to infer the use of an ATDS. *Hickey v. Voxernet LLC*, 887 F. Supp. 2d 1125, 1129-30 (W.D. Wash. 2012). Therefore, allowing Plaintiff to proceed to discovery is crucial to determine the true nature of the dialing system. As the court in *Libby* recognized, "no plaintiff will have personal knowledge of the defendant's telephone system at the pleadings stage— only the defendant will have that knowledge." *Id.* at 8. To deny Plaintiff the opportunity for discovery would be to deny him a fair chance to obtain evidence critical to his claim, evidence that is within Sienna's possession.

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Sienna's Motion to Dismiss as to Plaintiff's ATDS claim.

**III.** **Plaintiff Adequately States a Claim for Violation of Sienna's Internal Do-Not-Call Procedures.**

Defendant mischaracterizes both the applicable regulation and relevant case law in arguing that Plaintiff failed to state a claim for relief under 47 C.F.R. § 64.1200(d). Contrary to Sienna's assertion, 47 C.F.R. § 64.1200(d) does not contain a "safe harbor" provision that allows for an automatic grace period. Instead, it establishes a clear procedural requirement for telemarketers to have an internal do-not-call list and to honor do-not-call requests within a reasonable time. The plain language of § 64.1200(d) demonstrates that it is a procedural requirement, not an affirmative defense. The regulation states that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls." 47 C.F.R. § 64.1200(d). This language clearly mandates that telemarketers must have specific procedures in place before making telemarketing calls. It does not provide a "safe harbor" or excuse for failing to have or follow those procedures.

Additionally, Sienna incorrectly cites *Simmons v. Charter Communications, Inc.*, 2016 U.S. Dist. LEXIS 42091 (D. Conn. March 30, 2016) to support its argument. In *Simmons*, the court addressed the very issue at hand – the distinction between the requirements of § 64.1200(c) and (d). The court held that while § 64.1200(c)(2)(i) provides a safe harbor for accidental calls to numbers on the national DNC registry if the caller has established and implemented written procedures to comply with the national do-not-call rules, "there is no statutory safe harbor for a violation of the requirement to have procedures in place" under § 64.1200(d). *Id.* at 16.

Plaintiff has sufficiently alleged that Sienna violated § 64.1200(d) by failing to have the required procedures in place. Plaintiff explicitly revoked consent to be contacted by Sienna, stating, "Stop I'm not interest and on the do not call list. Don't contact me anymore" (FAC ¶ 27).

This allegation, taken as true for the purposes of a motion to dismiss, is sufficient to state a claim for relief under § 64.1200(d). Moreover, Sienna bears the burden of proving that it had the necessary procedures in place and that they were correctly implemented before making the calls to Plaintiff. Simply asserting that procedures existed is insufficient. Sienna must demonstrate that it effectively executed those procedures to comply with § 64.1200(d).

Furthermore, Sienna misinterprets the thirty-day period mentioned in § 64.1200(d)(3) as a "safe harbor" or a period within which any delay is presumptively reasonable. As the court in *Lourie v. Papa John's Int'l, Inc.*, 2024 U.S. Dist. LEXIS 119679 (D. Md. July 6, 2024), explained, the thirty-day period establishes the maximum time within which a telemarketer must comply with a do-not-call request. It does not suggest that any delay within that period is automatically reasonable. *Id.* at 8. The Court held that the reasonableness of any delay depends on the telemarketer's capability to process the request. *Id.* at 9 (citing *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C.R. 14014, 14,069, ¶ 94 (July 3, 2003)). The FAC alleges that Sienna has the capability of immediately complying with do-not-call requests (FAC ¶ 28). It is particularly unreasonable to expect a delay in compliance when, as in this case, Plaintiff was dealing with a single, identifiable agent of Sienna, Vincent Palazzo, who could have easily ceased contact when requested to do so. Therefore, any delay in honoring Plaintiff's request, even if within thirty days, could be deemed unreasonable.

The FAC properly alleges the necessary elements to establish a violation of § 64.1200(d). Specifically, it alleges that: Plaintiff made a do-not-call request to Sienna (FAC ¶ 27); Sienna failed to honor this request within a reasonable time by sending nine messages on March 8, 2024, just one day after the request (FAC ¶¶ 29-31); and Sienna had the technological capability to immediately comply with the request (FAC ¶ 28). These allegations, taken together, establish a

plausible claim that Sienna violated § 64.1200(d) by failing to implement its internal do-not-call procedures properly.

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Sienna's Motion to Dismiss as to Plaintiff's claim under 47 C.F.R. § 64.1200(d).

**IV.     Plaintiff's Phone Number is a Residential Line Protected by the TCPA**

Sienna mischaracterizes the law and the facts in arguing that Plaintiff's do-not-call claim under the TCPA (Count III) fails because the phone number is allegedly used for business purposes. Sienna's attempt to label the number as a business line based solely on its presence in a business directory is an oversimplification of the issue and ignores the primary use of the number, which is demonstrably residential. Additionally, simply listing a number on a business website or directory does not automatically strip it of its residential character for TCPA purposes. The key factor is the primary use of the number. As stated in the FAC, Plaintiff primarily uses the number for personal calls, text messaging with family and friends, and managing his personal affairs (FAC ¶¶ 14-15). This clearly establishes the predominantly residential nature of the number, regardless of its occasional use for business purposes.

Furthermore, Sienna's attempt to use the content of the text messages to bolster its argument is irrelevant. The fact that the messages discuss financing services does not change the nature of the phone number itself. The TCPA protects residential subscribers from unwanted calls, regardless of the content of those calls. The FCC has clearly stated that even numbers used for both business and personal purposes can be considered residential if the primary use is personal. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, 14099 (2003). To rule otherwise would undermine the TCPA's core purpose of protecting consumers from unwanted telemarketing calls.

Sienna's reliance on *Bank v. Independence Energy Grp. LLC*, 2015 U.S. Dist. LEXIS 96532 (E.D.N.Y. Aug. 4, 2015), is not applicable because the facts in *Bank* are significantly different from the present case. In *Bank*, the court granted summary judgment for the defendant after extensive discovery revealed overwhelming evidence that the plaintiff had consistently and pervasively held out the phone number in question as a business line. *Id.* at 5. The plaintiff in *Bank* used the number on his business card, professional letterhead, court filings, and provided it to clients, prospective clients, and other business contacts. *Id.* at 4-5. This extensive and consistent use for business purposes clearly established the number as a business line.

In contrast, Sienna relies solely on the presence of Plaintiff's number in a business directory to label it as a business line. This is a far cry from the overwhelming evidence presented in *Bank*. Unlike the plaintiff in *Bank*, Plaintiff here primarily uses the number for personal purposes, as clearly stated in the FAC (FAC ¶¶ 14-15). Sienna has presented no evidence to suggest that Plaintiff has used the number in a manner consistent with a business line, such as on business cards, letterhead, or in professional communications.

This case is analogous to *Horton v. Multiplan Inc.*, 2024 U.S. Dist. LEXIS 123050 (N.D. Tex. July 11, 2024), where the court rejected a similar argument from the defendant. The court in *Horton* held that a cell phone can be considered a residential line for purposes of § 64.1200(d) when the plaintiff pleads that the phone is used for residential purposes. *Id.* at 19-20. The court also cited the FCC's presumption that "wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.'" *Id.* at 20 (quoting *In re Rules and Regs. Implementing the Tel. Cons. Protec. Act of 1991*, 18 F.C.C.R. 14014, at *14 (2003).

Similarly, in *Guadian v. United Tax DEF. LLC*, 2024 U.S. Dist. LEXIS 6572 (W.D. La. Jan. 10, 2024), the Court recognized that while there is a split of authority within the Fifth Circuit

on whether a cell phone can be considered a residential line, the plaintiff can overcome this hurdle by alleging sufficient facts to show the phone is used for residential purposes. *Id.* at 13-14. The Court found the plaintiff's allegations that the cell phone was used for personal, family, and household use, registered in his personal name, and paid for from his personal accounts sufficient to establish the residential nature of the phone. *Id.* at 14-15.

Sienna attempts to draw parallels to *Shelton v. Target Advance LLC*, 2019 U.S. Dist. LEXIS 64713 (E.D. Pa. Apr. 16, 2019), where the Court found the plaintiff lacked standing to bring a TCPA claim because the phone number was used for business purposes and held out as such. However, *Shelton* is distinguishable. The plaintiff in *Shelton* operated a professional judgment recovery business and actively solicited calls from telemarketers to generate TCPA lawsuits. *Id.* at 13-14. The court found this conduct to be outside the zone of interests protected by the TCPA. *Id.* at 15.

Unlike the plaintiff in *Shelton*, Plaintiff here is not alleged to have engaged in any such conduct. There is no evidence that Plaintiff actively solicited calls from telemarketers or used the phone number solely for the purpose of generating TCPA lawsuits. Moreover, Sienna's request for the Court to take judicial notice of public records to determine the nature of the phone number is premature. This is a factual question that cannot be resolved at the motion to dismiss stage. At best, the public records Sienna references only establish the existence of a business listing, not the primary use of the number. Sienna's reliance on the SOS record and LexisNexis search is insufficient to overcome Plaintiff's allegations regarding the primary use of the phone number.

Accordingly, Plaintiff respectfully requests that the Court deny Sienna's Motion to Dismiss as to Plaintiff's TCPA standing.

### V. Plaintiff's TTSA Claims are Properly Pled

Sienna's argument that Plaintiff cannot establish a violation of the TTSA because he cannot establish a violation of the TCPA is without merit. As demonstrated in the preceding arguments, Plaintiff has adequately pled a cause of action under the TCPA. Furthermore, the case Sienna relies on, *Shields v. Dick*, supports Plaintiff's position. In *Shields*, the court acknowledged that the TTSA "proscribes only that conduct which is also prohibited by the TCPA." *Shields v. Dick*, 2020 U.S. Dist. LEXIS 170189, at *6 (S.D. Tex. Sept. 16, 2020). However, the court went on to explain that even an alleged violation of the TCPA, without an actual finding of liability, can be enough to satisfy the injury-in-fact requirement for standing. The court stated that "the receipt of an unwanted automated text message poses the exact type of concrete harm that Congress chose to recognize as legally cognizable in the TCPA." *Id.* at 9. This reasoning demonstrates that a plausible claim of a TCPA violation, as Plaintiff has alleged here, can be sufficient to support a TTSA claim.

Since Plaintiff has standing to bring a TCPA claim and has adequately alleged a violation of the statute, Sienna's argument that Plaintiff's TTSA claims must fail is unfounded. Plaintiff respectfully requests that the Court deny Sienna's Motion to Dismiss as to Plaintiff's claims under the TTSA.

### VI. Plaintiff's Chapter 302 Claim Encompasses the Initial Phone Call

Sienna argues that Plaintiff's claim for damages under Chapter 302 of the Texas Business and Commerce Code fails because the registration requirement of Chapter 302 does not apply to text messages. Sienna cites *Powers v. One Techs., LLC*, 2022 WL 299288 (N.D. Tex. July 28, 2022), for this proposition, and while *Powers* did hold that Chapter 302 does not encompass text messages, this argument ignores the initial phone call Plaintiff received from Sienna and presents an overly narrow interpretation of the statute.

The FAC clearly alleges that Plaintiff received an unsolicited telemarketing phone call from Sienna on March 7, 2024 (FAC ¶ 22). This call, separate from the subsequent text messages, falls squarely within the definition of "telephone solicitation" under Chapter 302, which is defined as "a telephone call a seller or salesperson initiates to induce a person to purchase, rent, claim, or receive an item." Tex. Bus. & Com. Code § 302.001.

While the *Powers* case dealt exclusively with text messages, this Court should not feel bound by its interpretation of Chapter 302. There is currently no case law directly from the Fifth Circuit or the Supreme Court that addresses whether Chapter 302 applies to text messages. The *Powers* decision, while persuasive, is not binding on this Court. Moreover, a more expansive interpretation of Chapter 302, one that encompasses modern forms of communication like text messages, is more consistent with the statute's purpose of protecting consumers from unwanted solicitations.

Even if the Court accepts Sienna's argument that text messages are not covered by Chapter 302, Plaintiff's claim still survives based on the initial phone call, which is undeniably a "telephone solicitation" under the plain language of the statute. Therefore, Sienna's argument that Plaintiff's Chapter 302 claim fails in its entirety is incorrect. Plaintiff has adequately alleged a violation of Chapter 302 based on the initial phone call, and this claim should be allowed to proceed.

**Conclusion**

For all of these reasons, the Court should deny Defendant's motion in its entirety.

Dated: August 14, 2024

Respectfully submitted,

*/s/Paulina Almanza*_____
Paulina Almanza

**ALMANZA TERRAZAS PLLC**
13423 Blanco Rd, PMB 8098
San Antonio, Texas 78216
Telephone: 512-900-9248
Email: paulina@almanza.legal

State Bar No. 24109580
Attorney for Plaintiff and the putative class

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 14, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, and it is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

*/s/Paulina Almanza*
Paulina Almanza