**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **MARK ORTEGA,** individually and on behalf of all similarly situated, | § § § | |
| Plaintiff, | § § | CIVIL ACTION No. 5:24-cv-487-OLG |
| v. | § § § | |
| **SIENNA MARKETING & CONSULTING, INC.** a New York Corporation | § § § | |
| Defendant. | § § § | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**
**PLAINTIFF'S FIRST AMENDED COMPLAINT UNDER FED. R. CIV P. 12(b)(6)**

Plaintiff Mark Ortega's ("Plaintiff" or "Ortega") Response to Defendant Sienna Marketing & Consulting, Inc.'s ("Sienna" or "Defendant") Motion to Dismiss, ECF No. 13, fails to remedy the fundamental deficiencies in his First Amended Complaint ("FAC") arising under the Telephone Consumer Protection Act ("TCPA"). ECF No. 9. Thus, the FAC should be dismissed.

As shown, Plaintiff pled himself out of his autodialer-based claims in his initial Complaint, ECF No. 1, by alleging Defendant used lead generator services to contact Plaintiff—meaning Plaintiff's phone number was neither randomly nor sequentially generated, a requirement for liability under the TCPA. After Sienna conferred with Plaintiff about this issue, Plaintiff conspicuously amended his complaint to remove this dispositive fact. Now, Ortega argues this fact was removed from the FAC to "streamline" the pleadings, not to rescue the barred claim from dismissal. This is false. Plaintiff goes on to misinterpret the U.S. Supreme Court's definition of an automatic telephone dialing system ("ATDS" or "autodialer") to rescue his deficient pleadings. Finally, Plaintiff fails to state an internal do-not-call claim because Sienna had a reasonable time,

up to 30-days, to honor Ortega's request to be placed on its internal do-not-call list. Ortega never plead Sienna acted unreasonably by not immediately complying. Nor does Ortega provide any factual underpinning for his claim Sienna lacked a written do-not-call policy, as required by statute. Because Plaintiff cannot cure the deficiencies in its FAC after two attempts, this Court should dismiss this case with prejudice.

## ARGUMENT

### A. Plaintiff Amended his Pleadings in Bad Faith and Misinterprets U.S. Supreme Court Precedent in a Transparent Attempt to Avoid Dismissal of his Autodial Claims.

After initially pleading facts that barred any autodialer claims, Ortega now scrambles to avoid the inevitable dismissal of said claims. In the initial Complaint, Ortega pled Sienna used lead generator services to make initial contact with Ortega—a fact Sienna admits. *See* ECF No. 8 ¶ 18. After Sienna informed Ortega during the pre-motion conference that the use of lead services contradicts and bars an autodial claim, Ortega removed it from the FAC. ECF No. 9. Ortega boldly claims the omission of the reference to Sienna's use of lead generation services was done "to streamline the pleading and avoid unnecessary factual details that are not dispositive of the ATDS issue." ECF No. 13 at 5. The removal of the reference to lead generation services is of no moment. *See Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474, 476 (5th Cir. 2001) (defining a judicial admission as a formal concession in the pleadings that is binding on the party making them and which, while not itself evidence, has the effect of withdrawing a fact from contention). Ortega's pleading of Sienna's use of lead generation services in the initial Complaint is dispositive of the ATDS issue; it definitively establishes that Sienna could ***not*** have used an ATDS to contact Ortega. As a result, there can be no ATDS-based liability and this claim must fail.

Section 227(a) of the TCPA establishes that an ATDS must: (1) store or produce telephone numbers ***using a random or sequential number generator***; and (2) dial such numbers. 47 U.S.C.

§227(a). As the U.S. Supreme Court held in *Facebook, Inc. v. Duguid*, 592 U.S. 395, 399 (2021), to qualify as an ATDS "a device must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." A device that can store and dial telephone numbers but does not use a random or sequential number generator is not covered by the statute. *Id*. Critically, "[i]f the equipment only stores and automatically dials numbers but does not randomly generate those numbers, it is not a prohibited ATDS under the Act." *See Atkinson v. Pro Custom Solar LLC*, No. SA-21-CV-00178-OLG, 2022 WL 4071998 at *6 (W.D. Tex. Sept. 1, 2022) (citing *Duguid*, 592 U.S. at 398).

Ortega argues "Sienna used an ATDS to call from a stored list, using a random or sequential number generator to make its selections." ECF No. 13 at 6. This argument is based on a misreading of footnote 7 in *Duguid*, which has been misinterpreted to suggest it is enough that an autodialer "use a random number generator to determine the order in which to pick numbers from a preproduced list [and] then store those numbers to be dialed at later time." *Duguid*, 592 U.S. at 413 n. 7 Ortega's argument relies on a selective reading of one line within footnote 7 and ignores the greater context of that footnote and the opinion. The U.S. Supreme Court in *Duguid* cited an *amicus* brief filed by the Professional Association for Consumer Engagement ("PACE") that makes clear that the preproduced list of phone numbers referenced in footnote 7 was itself created through a random or sequential number generator. *Borden v. eFinancial, LLC,* No. C19-1430JLR, 2021 WL 3602479 at *5 (W.D. Wash. Aug. 13, 2021), *aff'd*, 53 F.4th 1230 (9th Cir. 2022) (*citing* PACE Brief at 19). A system that merely uses a random number generator to determine the ***order*** in which to pick phone numbers from a preproduced list is not an ATDS under the statute. *Timms v. USAA Fed. Sav. Bank*, 543 F. Supp. 3d 294, 301 (D.S.C. 2021) ("[T]he Supreme Court's statement—that an 'autodialer might use a random number generator to determine the order in

which to pick phone numbers from a preproduced list" and "then store those numbers to be dialed at a later time'—refers to the process as explained by PACE on page 19 of its amicus brief. And, as a result, the 'preproduced list,' *Duguid*, 141 S. Ct. at 1172 n.7, is one that is 'sequentially generated and stored.' … Because the 'preproduced list' in this case is not one that is 'sequentially generated and stored,' the language from footnote 7 is inapposite."). Importantly, Ortega's argument has been rejected by at least four Courts of Appeals. *See Borden v. eFinancial, LLC,* 53 F.4th 1230 (9th Cir. 2022); *Beal v. Outfield Brew House, LLC*, 29 F.4th 391 (8th Cir. 2022); *Perrong v. Montgomery Cnty. Democratic Comm.*, 2024 WL 1651274 (3d Cir. Apr. 17, 2024); *Soliman v. Subway Franchisee Advert. Fund Tr., LTD.*, 101 F.4th 176, 185-86 (2d Cir. 2024).

Contrary to Ortega's assertion, the U.S. Supreme Court did not decide *Duguid* on the basis that the text messages sent by Facebook were "targeted communication" that did not fall within the scope of the ATDS definition. ECF No. 13 at 6. Instead, *Duguid* made clear that the phrase "using a random or sequential number generator" modifies both "store" and "produce." *Duguid*, 592 U.S. 395 at 399, 402 (2021). A device using a number generator to select and dial phone numbers from a previously compiled list—like those provided by a lead generation service—is not an ATDS. Thus, the fact that Sienna used lead generation services to make contact with Ortega is dispositive of Ortega's ATDS claim. Said differently, because Sienna did not use a device to "randomly" generate Ortega's number, its actions are not prohibited by statute. Ortega's attempt to downplay its initial allegations and abrupt about-face in the FAC does not change this result.

Ortega also changed his description of the phone call he received from Sienna. Ortega originally described hearing a "pause and audible click," ECF No. 1 ¶¶23-24, to instead saying he heard a "distinct pause and delay." ECF No. 9 ¶ 24. Plaintiff argues that this "minor wording change is immaterial to the core allegations of the FAC." ECF No. 13 at 5. This is incorrect. A

bare allegation that "silence and then hearing a live person" signifies a "predictive dialer system in operation," is mere speculation and does not support any inference that an ATDS system was used. *Hunsinger v. Dynata LLC*, No. 3:22-CV-00136-G-BT, 2023 WL 2377481, at *7 (N.D. Tex. Feb. 7, 2023), *report and recommendation adopted*, No. 3:22-CV-0136-G-BT, 2023 WL 2386710 (N.D. Tex. March 4, 2023). Plaintiff cites to *Cunningham v. Nationwide Sec. Sols., Inc.*, 2017 U.S. Dist. LEXIS 223796 (N.D. Tex. Nov. 2, 2017), to support its argument that "dead air time" is sufficient to plead the use of an ATDS. Critically, *Cunningham* was decided before the U.S. Supreme Court's decision in *Duguid* clarified the definition of an ATDS. Without any further support, Ortega's claim is no more than a bare allegation that does not support an inference that Sienna used an ATDS. Plaintiff has pled himself out of court on any ATDS claims by alleging that the calls he received from Sienna were the product of Sienna's use of lead generation services. This Court should dismiss such claims with prejudice.

**B. Plaintiff Does not Plead that Sienna's Conduct was Unreasonable and Fails to State an Internal Do-Not-Call Claim.**

Plaintiff argues Sienna's defense—*i.e.*, that it was permitted a reasonable amount of time, up to 30 days, to honor a do-not-call request—is in fact "a procedural requirement for telemarketers to have an internal do-not-call list and to honor do-not-call requests within a reasonable time." ECF No. 13 at 8. Ortega then argues because Sienna did not immediately honor his do-not-call request, he sufficiently established Sienna did not have the required internal procedures to maintain a list of persons who request not to receive telemarketing calls. *Id*. This is wrong.

First, Ortega offers nothing more than bare speculation that Sienna lacked the required procedures; he merely claims Sienna "has the capability of immediately complying" with Ortega's request. ECF No. 9 ¶ 28. Ortega's belief about Sienna's capacity to "immediately" comply with his request does not support his contention that Sienna lacked internal policies required by the

statute; it is a conclusory statement undeserving of consideration on a motion to dismiss.

Second, Ortega also does not plead that Sienna acted unreasonably by not immediately complying with his request. Ortega correctly recognizes "the reasonableness of any delay depends on the telemarketer's capability to process the request." ECF No. 13 at 9 (citing *Lourie v. Papa John's Int'l, Inc.*, 2024 U.S. Dist. LEXIS 119679 (D. Md. July 6, 2024). But Ortega does not argue in his FAC that Sienna acted unreasonably. Only now does Ortega seek to cure his deficient pleadings by complaining Sienna should have complied with his request immediately, that it was unreasonable for Sienna to not comply immediately, and that such failure to comply reveals that Sienna did not have the required internal policies for maintaining a do-not-call list. No factual support is offered for any of these logical leaps and such conclusory statements cannot cure the deficiencies in the FAC. This Court should dismiss Ortega's internal do-not-call claim because it is merely a recital of the requirement of Subsection 64.1200 without any factual basis.

**C. Ortega's TCPA Claim Fails because He Registered the Number with His Business.**

Sienna argued Ortega's do-not-call claim fails because the TCPA's protections to not apply to business-to-business calls, and Ortega used his phone for both residential and business purposes. *See* ECF No. 12 at 9. In response, Ortega attempts to craft a ***new test*** for determining whether a phone number is a residential or business number: that the court must look at the "primary use" of the number. ECF No. 13 at 10. Tellingly, Ortega cites no authority to support this test.

Plaintiff's reliance on *Horton v. MultiPlan Inc.*, is misguided. In *Horton*, the plaintiff argued his cell phone number "[was] not even registered to [his] business" in support of his claim that he was a "residential subscriber" for the purposes of 47 C.F.R. § 64.1200(d). *Horton v. MultiPlan Inc.*, No. 3:23-CV-02098-S-BT, 2024 WL 3380236 at *4 (N.D. Tex. June 7, 2024), *report and recommendation adopted*, No. 3:23-CV-2098-S-BT, 2024 WL 3378719 (N.D. Tex.

July 11, 2024). This instant case is distinguishable, however, because Ortega **has** registered his number with his business—*i.e.*, Mao Real Estate, LLC. *See* ECF No. 12 at 10; Exhibit C & D.

Plaintiff also misreads *Bank v. Indep. Energy Group LLC*, No. 12-CV-1369, 2014 WL 4954618 (E.D.N.Y. Oct. 2, 2014) ("*Bank I*"). The Court in *Bank I* sought to determine whether the telephone line was considered "residential" under the TCPA. Bank argued for a bright line rule based entirely on how the number is registered with the company: if it is registered as a residential line, it is residential, no matter how the line is actually used. *Id*. at *3. The court agreed this was a good starting point—but went on to say, "***if the subscriber holds out such a telephone number to the general public as a business line***, the line should not be considered 'residential' for the purposes of the TCPA–even if it is registered as 'residential' with the telephone company." *Id*. (emphasis added). Indeed, the court made this focus even clearer when, in a subsequent order, the court held that "even if it is registered as 'residential' with the telephone company, … evidence [showing that] Bank held out the Subject Telephone to the public as a business line" warranted judgment in favor of the defendant. *Bank v. Indep. Energy Group LLC*, No. 12-CV-1369 JG VMS, 2015 WL 4488070, at *2 (E.D.N.Y. July 23, 2015) ("*Bank II*"). Thus, the question in *Bank I* and *Bank II* was not whether plaintiff used his phone more for residential or business purposes. The question was simply does Bank use his phone for business at all? The answer, in both *Bank* and this case, is yes, a fact which Ortega does not dispute. Sienna contacted Ortega on a phone he used for business for a business purpose. And Ortega does not dispute that Sienna contacted him for a business purpose. Therefore, this Court should dismiss Ortega's TCPA claims with prejudice.

## CONCLUSION

For the above reasons, as well as those addressed in Defendant's Motion to Dismiss Plaintiff's First Amended Complaint for Failure to State a Claim under Fed. R. Civ. P. 12(b)(6),

ECF No. 12, Defendant Sienna Marketing & Consulting respectfully requests that this Court

dismiss Plaintiff's Complaint in its entirety, with prejudice.

Respectfully submitted,

By: */s/ Robert Scott*

Robert Scott
State Bar No. 17911800
Bobbye Pyke (court admission application filed)
State Bar No. 24123274
Jeffrey N. Rosenthal (*pro hac vice* forthcoming)
Pennsylvania Bar No. 209334
BLANK ROME LLP
717 Texas Avenue, Suite 1400
Houston, Texas 77002
(713) 228-6601
(713) 228-6605 (fax)
bobbye.pyke@blankrome.com
jeffrey.rosenthal@blankrome.com
harrison.brown@blankrome.com

**ATTORNEYS FOR DEFENDANT SIENNA
MARKETING & CONSULTING, INC.**

**CERTIFICATE OF SERVICE**

I hereby certify that on August 21, 2024, a true and correct copy of the foregoing instrument was served on counsel for all parties to this action through the Court's CM/ECF E-file delivery service.

*/s/ Robert Scott*
Robert Scott