**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **MARK ORTEGA,** individually and on behalf of all similarly situated, | § § § | |
| Plaintiff, | § § | CIVIL ACTION No. 5:24-cv-487 |
| v. | § § § | |
| **SIENNA MARKETING & CONSULTING, INC.** a New York Corporation | § § § | |
| Defendant. | § § § | |

**NOTICE OF SUPPLEMENTAL AUTHORITY**

As supplemental authority in support of Defendant's Motion to Dismiss Plaintiff's First Amended Complaint for Failure to State a Claim under Fed. R. Civ. P. 12(b)(6) (ECF No. 12), Defendant Sienna Marketing & Consulting, Inc. respectfully submits the attached Memorandum Opinion issued on September 30, 2024, *Anthony v. Nat'l Republican Cong. Comm.*, 2024 U.S. Dist. LEXIS 177631, No. 22-3382 (E.D. Pa.). In that case, just as in the current matter, the plaintiff alleged that the defendant sent unsolicited test messages to his cell phone using an automatic telephone dialing system ("ATDS") in violation of the federal Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Op. at *2.

In its opinion, the district court granted the defendant's motion to dismiss for failure to state a claim with prejudice. *Id*. at *16, *18-20. As in this case, the *Anthony* plaintiff alleged that the defendant's system "automatically and randomly dialed the numbers at issue using a human-generated list of phone numbers that was previously stored on the equipment." *Id*. at *9. The Court held that "the fundamental problem with the Complaint is that Plaintiff pleaded too much, not too little" and that by pleading "the number originated from a pre-produced list of numbers, which

were not randomly or sequentially *generated*, the allegations in the complaint do not meet the TCPA's definition of an ATDS." *Id*. at *16-18 (emphasis original). A copy of the opinion is attached for this Court's consideration.

Respectfully submitted,

By: */s/ Bobbye Pyke*
 Bobbye Pyke
 State Bar No. 24123274
 Jeffrey N. Rosenthal (*pro hac vice* forthcoming)
 Pennsylvania Bar No. 209334
 BLANK ROME LLP
 717 Texas Avenue, Suite 1400
 Houston, Texas 77002
 (713) 228-6601
 (713) 228-6605 (fax)
 bobbye.pyke@blankrome.com
 jeffrey.rosenthal@blankrome.com

 ATTORNEYS FOR DEFENDANT SIENNA
 MARKETING & CONSULTING, INC.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 2, 2024, a true and correct copy of the foregoing instrument was served on counsel for all parties to this action through the Court's CM/ECF E-file delivery service.

*/s/ Bobbye Pyke*
Bobbye Pyke

No *Shepard's* Signal™
As of: October 1, 2024 2:34 PM Z

## *Anthony v. Nat'l Republican Cong. Comm.*

United States District Court for the Eastern District of Pennsylvania

September 30, 2024, Decided; September 30, 2024, Filed

CIVIL ACTION NO. 22-3382

### Reporter

2024 U.S. Dist. LEXIS 177631 *

MICHAEL ANTHONY, Individually and On Behalf of Others Similarly Situated, Plaintiff, v. NATIONAL REPUBLICAN CONGRESSIONAL COMMITTEE, A District of Columbia Non-Profit Organization, Defendant.

## Core Terms

numbers, sequential, generator, random, intrusion, seclusion, allegations, texts, text message, dialing, telephone number, stored, qualify, argues, randomly, pre-produced, contends, sending, dialer, motion to dismiss, phone number, modifies, damages, cause of action, telephone, class action, class member, automatically, unsolicited, Autodialed

**Counsel:** [*1] For MICHAEL ANTHONY, INDIVIDUALLY AND ON BEHALF OF OTHERS SIMILARLY SITUATED, Plaintiff: PATRICK H. PELUSO, LEAD ATTORNEY, WOODROW & PELUSO LLC, DENVER, CO; ZACHARY SILVERSTEIN, LEAD ATTORNEY, Lundy, Beldecos & Milby, Narberth, PA.

For NATIONAL REPUBLICAN CONGRESSIONAL COMMITTEE, A DISTRICT OF COLUMBIA NON-PROFIT ORGANIZATION, Defendant: DALLIN B. HOLT, JONATHAN P. LIENHARD, LEAD ATTORNEYS, Holtzman Vogel Baran Torchinsky & Josefiak PLLC, Haymarket, VA; JEFFREY N. ROSENTHAL, LEAD ATTORNEY, BLANK ROME LLP, PHILADELPHIA, PA.

**Judges:** HON. KAI N. SCOTT, United States District Court Judge.

**Opinion by:** KAI N. SCOTT

## Opinion

### MEMORANDUM OPINION

**Scott, J.**

In this putative telemarketing class action, the plaintiff, Michael Anthony, alleges that the defendant, National Republican Congressional Committee ("NRCC"), sent unsolicited text messages to his and other consumers' cellular telephones using an automatic telephone dialing system ("ATDS") in violation of the federal *Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227*. He also asserts an intrusion upon seclusion tort claim under Pennsylvania law based on the same conduct.

NRCC filed a motion to dismiss the complaint for failure to state a claim of a violation of the TCPA, contending that Mr. Anthony has not plead facts sufficient [*2] to show that an ATDS was used to send the text messages. It also argues that even if the plaintiff alleged facts indicative of the use of an ATDS, the allegation in the complaint that NRCC's system texted individuals using numbers from a pre-produced list means that NRCC did not use an ATDS as defined by the TCPA to send the texts. It also contends that the plaintiff has failed to state a claim for intrusion upon seclusion because the TCPA is a "codified equivalent" of that common law tort, and thus falls along with the TCPA claim.

For the reasons explained below, the Court will dismiss the plaintiffs TCPA claims with prejudice for failure to state a claim, and will dismiss the intrusion upon seclusion claim without prejudice for lack of subject matter jurisdiction.

### BACKGROUND

According to the complaint, in 2019, Mr. Anthony was barraged with at least sixty-two unsolicited text messages

Anthony v. Nat'l Republican Cong. Comm., 2024 U.S. Dist. LEXIS 177631

from the NRCC, designed to solicit him for political donations and to promote Republican political candidates. Compl. (ECF No. 1) ¶¶ 12, 14-15. The text messages were sent at all hours of the day and night, including many after 9:00 pm, and some even after midnight. Compl. ¶ 12. Almost all of the text **[*3]** messages were sent from the same short code, and the content of the texts was impersonal and generic. Compl. ¶¶ 14-16.[1] Neither Mr. Anthony, nor the putative class members, provided their phone numbers to NRCC or to any political organization, and they never consented to the receipt of such text messages. Compl. ¶¶ 7, 19-20, 28, 40, 42. He made numerous efforts to identify the parties responsible for sending the texts and to request that they stop sending the texts. Compl. ¶¶ 21-27. However, no one he contacted was willing or able to stop the texts. *Id.*

Mr. Anthony alleges that the "impersonal and generic nature" of the messages, the frequency and volume of the messages, the fact that most of the text messages were sent from the same short code, and the lack of consent to receive the messages are "all indicative of the use of an AIDS." Compl. ¶¶ 14, 16. The complaint also alleges that the "hardware and software" used by NRCC qualifies the system as an ATDS under the TCPA because it had "the capacity to store, produce, and dial random or sequential numbers *en masse*, in an automated fashion." Compl. ¶ 8. Specifically, the complaint alleges that the equipment used to send the text messages **[*4]** at issue had the capacity to: "produce telephone numbers using a random or sequential number generator," see Compl. ¶ 18, and "use a random or sequential number generator in the process of storing numbers from a pre-produced list for texting at a later date." Compl. ¶ 17. *See also* Compl. ¶ 41 (the equipment NRCC used to place the text message calls "had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator").

As for damages, Mr. Anthony claims that NRCC's text message campaign caused him and the putative class members aggravation, nuisance, invasions of privacy, wear and tear on their telephones, consumption of battery life, lost cellular minutes, diminished use, enjoyment, value, and utility of their telephone plans, and interference with their use and enjoyment of, and the

ability to access, their cellphones. Compl. ¶¶ 13, 29.

Mr. Anthony asserts two claims against NRCC under the TCPA: one for sending the texts without the plaintiffs' consent, and the second for sending the texts after being told to stop sending them. He also asserts a state common law claim for intrusion upon seclusion. Specifically, in his first cause of action, **[*5]** he brings a claim on his behalf and on behalf of the Autodialed Text Class under the TCPA, § 227(b)(1)(A)(iii), claiming that NRCC sent unsolicited and unwanted text messages to him and other members of the class without their prior express consent. Compl. ¶¶ 39-45. In his second cause of action, he brings a claim on behalf of himself and the Autodialed Stop Text Class under the TCPA, § 227(b), claiming that NRCC sent unsolicited and unwanted text messages to him and other members of the class after being told to stop. Id. ¶¶ 46-49. In his third cause of action, he brings a claim on his behalf and on behalf of the Intrusion Upon Seclusion Class for invading the seclusion of his and the class members' personal privacy by sending them repeated unsolicited and harassing text messages. Id. ¶¶ 50-55.

In its motion to dismiss, NRCC argues that plaintiff has failed to state a TCPA claim for two reasons. First, it contends that the plaintiff did not plead facts with enough specificity to sufficiently allege that NRCC used an ATDS in sending its texts. Second, even if the plaintiff pled sufficient facts indicating that the NRCC used an ATDS to send the texts, one additional specific allegation in the complaint — that **[*6]** the numbers stored on NRCC's dialing system came from a "pre-produced list" — demonstrates that the NRCC did not use an ATDS as a matter of law. NRDC also argues that the claim for intrusion upon seclusion should be dismissed because the TCPA is a "codified equivalent" of that common law tort, and the two claims rise and fall together.

**STANDARD OF REVIEW**

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)* (quoting *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)*). A claim

---

[1] Mr. Anthony provides two sample screenshots of texts he received from NRCC, one of which was sent on August 19, 2019 at 12:38 am, and the other on that same date at 2:08 pm. *See* Compl. ¶ 15. The first states, in pertinent part: "All Trump patriots must read this. >>>>> Trump said he'll run for Pres. if we win back the House! Unless everyone reading this steps up, we lose Trump's Majority for good. >>>Emergency 3X Match activated for 30 mins >> gopwin.us/n38." The second states: "DROP WHAT YOU'RE DOING! 45min left to activate your Trump Patriot Status >> 99% of memberships claimed! HURRY. Before link expires for good: gopwin.us/ag7."

Anthony v. Nat'l Republican Cong. Comm., 2024 U.S. Dist. LEXIS 177631

is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly, 550 U.S. at 556*).

In considering a Rule 12(b)(6) motion to dismiss under Rule 12(b)(6), all well-pleaded allegations in the complaint are accepted as true and interpreted in the light most favorable to the plaintiff, and all inferences are drawn in the plaintiffs favor. *See McTernan v. City of York, 577 F.3d 521, 526 (3d Cir. 2009)* (quoting *Schrob v. Catterson, 948 F.2d 1402, 1408 (3d Cir. 1991)*). However, the plaintiff must allege facts necessary to make out each element of each claim he asserts. *Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013)*; *Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)* (quoting *Twombly, 550 U.S. at 563 n.8*). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not sufficient. *Iqbal, 556 U.S. at 678* (citing **[*7]** *Twombly, 550 U.S. at 556*).

## DISCUSSION

*Claims Under the TCPA*

The TCPA prohibits the use of an ATDS to make a call or send a text to a cellular telephone number without the recipient's prior express consent. *Facebook, Inc. v. Duguid, 592 U.S. 395, 400 & n.2 (2021)* (citing *47 U.S.C. § 227(b)(1)(A)*). The statute creates a private right of action for persons to sue to enjoin unlawful uses of auto dialer systems and to recover up to $1,500.00 per violation or three times the plaintiffs' actual monetary losses. *Id.* (citing *47 U.S.C. § 227(b)(3)*). The TCPA defines an ATDS as "equipment which has the capacity— (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *47 U.S.C. § 227(a)(1)*).

NRCC argues that plaintiff has failed to state a TCPA claim because he did not plead facts with enough specificity to sufficiently allege that NRCC used an ATDS in sending its texts. NRCC notes that he identifies the content of only two of the sixty-two texts. It contends that his allegations that (1) the texts appeared "impersonal and generic [in] nature," (2) the "high frequency of the messages," and (3) that a portion of the texts were sent using a short code, are "speculative assertions" and "conclusory." NRCC Memo. of Law in Support of Mot. to Dismiss ("NRCC Br.") (ECF No. **[*8]** 20-1) at 5. Even if

these allegations are not deemed conclusory, NRCC argues that these types of allegations are not necessarily probative of the use of an ATDS and are thus insufficient to give rise to a plausible inference that an ATDS was used. *Id.* at 6-7.

NRCC also argues that even if the court finds that Mr. Anthony pled sufficient facts indicating that NRCC could plausibly have used an AIDS to send the texts, he has not alleged that NRCC used a random or sequential number generator to either produce or store the numbers at issue, which is required to qualify as an ATDS. *Id.* at 8. On this ground, NRCC contends that the complaint is flawed in two ways. First, while the complaint alleges that the equipment NRCC used to send the texts had the "capacity to produce telephone numbers using a random or sequential number generator" (Compl. ¶ 18), and the "capacity to use a random or sequential number generator in the process of storing numbers from a pre-produced list for texting at a later date" (Compl. ¶ 17), it never alleges that NRCC *used* that capacity to "generate" or "store" the phone numbers in the first place. NRCC's Reply Br. (ECF No. 23) at 3-4. NRCC argues that under the Supreme **[*9]** Court's decision in *Facebook* and a recent Third Circuit case, *Panzarella v. Navient Sols., Inc., 37 F.4th 867 (3d Cir. 2022)*, plaintiff was required to allege not just the system's capacity to produce or store numbers using a random or sequential number generator, but that the defendant actually *employed* that feature in the production or storage of the phone numbers at issue. NRCC Br. at 4, 8.

Second, even assuming the plaintiff had alleged that NRCC actually *used* the equipment's "capacity to use a random or sequential number generator in the process of storing numbers from a pre-produced list for texting at a later date," *see* Compl. ¶ 17, NRCC argues that these allegations still fall short of meeting the definition of an ATDS. Characterizing the complaint as alleging that NRCC's system automatically and randomly dialed the numbers at issue using a human-generated list of phone numbers that was previously stored on the equipment, NRCC contends that this does not qualify the system as an ATDS because it fails to meet the TCPA's requirement that the numbers called were originally generated or stored using a random or sequential number generator. NRCC Br. at 8-9.

In response to NRCC's argument that he did not plead facts with enough specificity to sufficiently **[*10]** allege that NRCC used an ATDS in sending its texts, the plaintiff argues that NRCC is isolating the facts alleged in the complaint. Conceding that any one fact alone may not be

Anthony v. Nat'l Republican Cong. Comm., 2024 U.S. Dist. LEXIS 177631

enough to support an inference that NRCC used an ATDS, Mr. Anthony contends that his claims are based on a multitude of facts about the nature, content, and context of the messages that he and the putative class members received. Pl.'s Resp. in Opp'n to Def.'s Mot. To Dismiss ("Pl.'s Br.") (ECF No. 21) at 4-8.

In response to NRCC's argument that the plaintiff has failed to allege that NRCC *used* its system's capacity to produce or store numbers using a random or sequential number generator, as required by *Panzarella*, Mr. Anthony contends that *Panzarella* departs from the statutory definition of an ATDS and the Supreme Court's holding in *Facebook*, effectively writing the word "capacity" out of the statute and imposing a new condition for liability. *Id. at* 11-12. Recognizing that this Third Circuit case is binding, he asks for leave to amend his complaint and/or to conduct limited discovery on the issue. *Id.* at 12-13.

In response to NRCC's contention that he has not adequately alleged that NRCC used a random or sequential number generator to **[*11]** either produce or store the numbers at issue, Mr. Anthony disputes that the "mere mention of a pre-produced list destroys" his claim. Pl.'s Br. at 9. First, he contends that he has "plainly alleged that defendant's dialer has the capacity to store or produce numbers using a random or sequential number generator." *Id.* at 9-10 (citing Compl. ¶¶ 17-18). Second, he claims that his "mention of a 'pre-produced list' [in paragraph 17 of the complaint] refers not to a list from which numbers are dialed, but to a source of numbers to be stored using a random or sequential number generator." *Id.* at 9. He claims that "such 'storage' qualifies a dialer as an ATDS" because NRCC's dialer "stores numbers from a list 'for texting at a later date' and can generate random or sequential numbers as part of that storage process." *Id.* at 9, 10 (quoting Compl. ¶ 17.) He claims this is markedly different from "a plaintiff who alleges only that numbers were called from off of a list, without any allegations of number generation." *Id.* at 10.

*Analysis*

To qualify as an "automatic telephone dialing system," a device must have the capacity either to store a telephone number using a random or sequential generator **[*12]** or to produce a telephone number using a random or sequential number generator." *Facebook, 592 U.S. at 399*. In *Facebook*, the plaintiff alleged that the defendant used an ATDS when its system auto-dialed numbers from a list of stored numbers to send text messages. The

defendant, Facebook, moved to dismiss, arguing that the plaintiff failed to allege that it used an ATDS because he did not claim Facebook sent text messages to numbers that had been randomly or sequentially generated. The issue before the Court was whether, to qualify as an ATDS, an auto-dialer system was required to have the capacity to use a random or sequential number generator to store numbers, or whether the auto-dialer system need only have the capacity to store numbers to be called and to dial such numbers automatically. *Facebook, 592 U.S. at 401*.

Facebook argued that the clause in § 227(a)(1) of the TCPA, "using a random or sequential number generator," modifies both verbs that precede it ("store" and "produce"), while the plaintiff argued that it modifies only the closest one ("produce"). *Id. at 402*. Looking at the plain text of the statute, the Court agreed with the defendant and found that the clause modifies both. It concluded that the statute thus specifies how the equipment must either "store" or **[*13]** "produce" telephone numbers to qualify as an ATDS. *Id.* The Court held that "a necessary feature of an autodialer under § 227(a)(1)(A) is the capacity to use a random or sequential number generator to either store or produce phone numbers to be called." *Id. at 409*.

The following year, the Third Circuit explained that the issue before the Court in *Facebook* was whether the phrase "using a random or sequential number generator" modifies both "store" and "produce," or modifies only "produce." *Panzarella, 37 F.4th at 874-75* (citing *Facebook, 592 U.S. at 401-02*). After quoting *Facebook's* holding that "[t]o qualify as an [ATDS], a device must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator," *Panzanella, 37 F.4th at 875* (quoting *Facebook, 592 U.S. at 399*), the court clarified that *Facebook* "does not stand for the proposition that a dialing system will constitute an ATDS only if it *actually generates* random or sequential numbers." *Panzanella, 37 F.4th at 875* (quoting *Facebook, 592 U.S. at 399*) (emphasis added).

The Third Circuit then went a step further in defining an ATDS. It held that:

> for a call to violate section 227(b)(1)(A), that call must employ either an ATDS's capacity to use a random or sequential number generator to produce telephone numbers to be dialed or its capacity to use a random **[*14]** or sequential number generator to

Case 5:24-cv-00487-OLG    Document 15    Filed 10/02/24    Page 8 of 10

Page 8 of 10

Anthony v. Nat'l Republican Cong. Comm., 2024 U.S. Dist. LEXIS 177631

store telephone numbers to be dialed.

*Id.* at 881.

Thus, the issue before the Court in *Facebook* was whether, to qualify as an ATDS, an auto-dialer system is required to have the capacity to use a random or sequential number generator to either produce or store numbers, or whether the auto-dialer system only needs to have the capacity to store numbers to be called and to dial such numbers automatically. *Facebook, 592 U.S. at 401*. The Court chose the first option, and held that to qualify as an ATDS, the defendant's auto dialer system must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator. In reaching that conclusion, the Court considered the plaintiffs argument that the clause in § 227(a)(1) of the TCPA, "using a random or sequential number generator," modifies only "produce," but rejected it in favor of the defendant's argument that the clause modifies both "store" and "produce." *Id. at 402*. Then, in *Panzarella*, the Third Circuit held that that a dialing system will constitute an AIDS only if it *actually generates* random or sequential numbers," not just if it has the capacity to do those things. *Panzarella, 37 F.4th at 875* (quoting *Facebook, 592 U.S. at 399* **[\*15]** ) (emphasis added).

Mr. Anthony reads *Facebook's* holding differently. Like the plaintiff in that case, he argues that the statute does not require that numbers stored on a defendant's system be generated randomly before they are in storage. He disagrees with the Court's interpretation of the clause in § 227(a)(1), and believes that the phrase "using a random or sequential number generator" modifies "produce." He takes issue with NRCC's contention that dialing from a pre-produced list can never qualify as an AIDS because that interpretation "reads the word 'store' completely out of the statute," and it contradicts the action of one court in this circuit. *See* Tr. of 5/18/23 Oral Argument on Motion to Dismiss (ECF No. 37) ("Oral Arg. Tr.") at 25 (citing *Smith v. Vision Solar LLC, No. CV 20 2185, 2023 WL 2539017, at \*2 (E.D. Pa. Mar. 16, 2023)*). On that basis, he argues that his allegation that NRCC's dialer system that stores numbers from a list for texting at a later date meets the definition of an AIDS because it can generate random or sequential numbers as part of that storage process.

NRCC points out that the plaintiff is raising the same arguments made by the plaintiff in *Facebook* regarding the very same issues, all of which were squarely rejected by the Supreme Court. Oral Arg. Tr. at 38-40. **[\*16]** It

contends that the process plaintiff alleges happened here does not, and cannot, meet the definition of an ATDS because the complaint fails to describe how NRCC can generate random numbers while storing the numbers from a pre-existing list. NRCC's Reply Br. at 4. It argues that the only actual "random" activity alleged in the complaint is that the NRCC device randomly chooses numbers -- but because that's from a human-generated list, it doesn't meet the TCPA's definition of an ATDS. Without alleging that NRCC actually used a number generator to produce or store the numbers in the first place, plaintiffs allegations do not amount to an ATDS.

The Court agrees with NRCC that the only actual "random" activity alleged in the complaint is that NRCC's auto dialer equipment randomly chose numbers to send the text messages to. But because the numbers originated from a pre-produced list of numbers, which were not randomly or sequentially *generated*, the allegations in the complaint do not meet the TCPA's definition of an ATDS. Therefore, the Court holds that NRCC's system does not constitute an ATDS as defined in the TCPA.

The majority of district courts in the Third Circuit agree that a device **[\*17]** that randomly or sequentially calls phone numbers on a previously compiled list does not qualify as an ATDS. *See e.g., Perrong v. Bradford, No. 2:23-CV-00510-JDW, 2023 WL 6119281, at \*3 - \*4 (E.D. Pa. Sept. 18, 2023)* (after analyzing the meaning of the term "number," which appears three times in the TCPA's definition of an ATDS, court concludes that the type of numbers that the number generator must generate randomly or sequentially are telephone numbers, and on that basis, rejects plaintiffs argument that if the defendant's auto dialer system randomly or sequentially called the numbers from a pre-produced list, that would satisfy the TCPA's definition of an ATDS); *Perrong v. Montgomery Cnty. Democratic Comm., No. 22-CV-4475, 2023 WL 4600423, at \*3 (E.D. Pa. July 18, 2023)* (finding that "calling numbers on a previously compiled list [of registered voters] randomly or sequentially" does not violate the TCPA because, under the ordinary meaning of the term "generate," selecting numbers from a list is not "generating" those numbers); *Camunas v. Nat'l Republican Senatorial Comm., 570 F. Supp. 3d 288, 295 (E.D. Pa. 2021)* (dismissing TCPA claim because the complaint did "not allege that a random or sequential number generator produced or stored numbers, but instead allege[d] that the phone numbers were already stored on the device prior to the messages being sent[, which] is precisely the type of allegation rejected by the Supreme Court in *Facebook*."); *Deleo v. Nat'l Republican*

Anthony v. Nat'l Republican Cong. Comm., 2024 U.S. Dist. LEXIS 177631

*Senatorial Comm., No. 21-03807, 2021 WL 5083831, at *7 (D.N.J. Nov. 1, 2021)* ("According to the Supreme Court, **[\*18]** merely alleging the defendant used a system that automatically dials phone numbers from a stored list does not meet the definition of an ATDS under the TCPA as contemplated by Congress. . . . The allegation of a 'stored list' is the exact characterization of an ATDS that the Supreme Court rejected in [*Facebook*].").

In light of the Court's holding that NRCC's system does not constitute an ATDS as defined in the TCPA, the plaintiff has failed to state a claim under § 227(a)(1) of the TCPA. Because any amendment would be futile, the Court will not grant the plaintiff leave to amend his TCPA claim. As NRCC states, "the fundamental problem with the Complaint is that Plaintiff pleaded too much, not too little. While courts may grant leave to amend when the allegations are insufficient to satisfy Rule 8, that is not the situation here." NRCC's Reply Br. at 8. Additionally, plaintiff's counsel conceded at oral argument that if the Court "agrees with [the defendant] that the telephone number has to be randomly produced by the dialing system and not uploaded from a list, then [he] wouldn't be able to amend." *See* Oral Argument Tr. at 33:9-12. Therefore, no amendment to the plaintiffs TCPA claim will be permitted, and his TCPA claims **[\*19]** in the first and second causes of action will be dismissed with prejudice.[2]

*Claim for Intrusion Upon Seclusion*

In his third cause of action, Mr. Anthony asserts a claim on his behalf and on behalf of the Intrusion Upon Seclusion Class for invading the seclusion of his and the class members' personal privacy by sending them repeated unsolicited and harassing text messages.

NRCC argues that the plaintiff has failed to state a claim for intrusion upon seclusion because the TCPA is a "codified equivalent" of that common law tort, and the two claims rise and fall together. In response, the plaintiff notes that although consumers may bring an action under the TCPA for as few as one or two calls that are in violation of the law, this does not eliminate the availability of a traditional claim for intrusion upon seclusion when the calls are so persistent and frequent as to amount to "hounding." The plaintiff claims to have alleged as much

in this case, and that he has thus adequately stated his independent claims for violation of the TCPA and for intrusion upon seclusion.

The Court will decline to rule on the merits of NRCC's motion to dismiss the intrusion upon seclusion claim because there is **[\*20]** no subject matter jurisdiction over this action.

The *Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)*, confers original jurisdiction over interstate class actions that have minimal diversity, at least 100 class members, and an amount in controversy exceeding $5 million. *28 U.S.C. §§ 1332(d)(2)*, (5)(B), (6); *Dart Cherokee Basin Operating Co., LLC v. Owens, 574 U.S. 81, 84-85 (2014)* (citations omitted). Mr. Anthony has established that there is minimal diversity because he and the NRCC are citizens of different states. He has also sufficiently alleged that the case satisfies the 100-class member minimum. *See* Compl. ¶ 33 ("Defendant sent autodialed text messages to thousands of consumers who fall into the definition of the Classes"). However, with the TCPA claims dismissed, he has not met his burden of pleading that the amount-in-controversy requirement has been met.

The only allegations regarding the amount of ascertainable damages are plead in connection with the two TCPA claims. *See* Compl. ¶¶ 44-45 ("Plaintiff and the other members of the Autodialed Text Class are each entitled to, under *47 U.S.C. § 227(b)(3)(B)*, a minimum of $500.00 in damages [and treble damages for willful conduct] for each violation of [the TCPA]; ¶¶ 47-49 ("Plaintiff and the other members of the Autodialed Stop Text Class are each entitled to a minimum of $500 in damages, and up to $1,500 **[\*21]** in [treble] damages, for each violation [of the TCPA]").

But Mr. Anthony makes no allegations about the monetary value of his damages, or that of any of the class members, resulting from the NRCC's alleged liability for the intrusion upon seclusion claim. In connection with this state law claim, he alleges that NRCC's conduct was "highly offensive to a reasonable person"; its "intrusion was intentional or committed with reckless disregard to Plaintiffs and the class members' rights[; and] . . . , would cause mental suffering, shame, or humiliation to any person with ordinary sensibilities;" that the plaintiff took "serious offense to Defendant's repeated and incessant

---

[2] Because the Court holds, as a matter of law, that NRCC's dialing system does not qualify as an ATDS as defined in the TCPA, it will not address NRCC's additional argument that the plaintiff failed to state a TCPA claim because the facts pled in the complaint were speculative, conclusory and generally insufficient to give rise to a plausible inference that an ATDS was used by the NRCC to send the texts.

Anthony v. Nat'l Republican Cong. Comm., 2024 U.S. Dist. LEXIS 177631

intrusions upon his privacy;" and as a result of NRCC's conduct, "Plaintiff and the class members have suffered and continue to suffer damages." Compl. ¶¶ 51-55. These allegations do not establish that the aggregate amount in controversy exceeds $5 million. Therefore, because Mr. Anthony has not met his burden of showing that this action meets CAFA's amount-in-controversy jurisdictional requirement based on his intrusion upon seclusion claim, the Court will dismiss the class action based on this common law claim without **[\*22]** prejudice for lack of jurisdiction under CAFA.

Nor does the Court have jurisdiction over this matter if Mr. Anthony brings this action on an individual basis only. Under the diversity jurisdiction statute, federal district courts have original jurisdiction of all civil actions "between . . . citizens of different States" where the amount in controversy exceeds $75,000. *28 U.S.C. § 1332(a)(1)*. Although Mr. Anthony and NRCC are diverse parties, the allegations in connection with his intrusion upon seclusion claim do not establish that the amount in controversy is over $75,000. Therefore, the Court will dismiss Mr. Anthony's individual claim for intrusion upon seclusion without prejudice for lack of diversity jurisdiction.

Because the Court is dismissing the intrusion upon seclusion claim without prejudice, Mr. Anthony is permitted to refile his claim in state court, either as a class action or on an individual basis only.

## CONCLUSION

Because the numbers dialed by NRCC's auto dialer system originated from a pre-produced list that was not randomly or sequentially generated, the complaint fails to allege that the system used by NRCC qualifies as an ATDS under the TCPA. Therefore, the plaintiff has failed to state **[\*23]** a claim under § 227(a)(1) of the TCPA. Because any amendment would be futile, the Court will not grant the plaintiff leave to amend his TCPA claims, and will dismiss them with prejudice. As for his intrusion upon seclusion claim, because Mr. Anthony has not met his burden of showing that this action meets CAFA's amount-in-controversy jurisdictional requirement based on his intrusion upon seclusion claim, the Court will dismiss the class action for lack of jurisdiction under CAFA. Therefore, the Court will dismiss the intrusion upon seclusion claim without prejudice, and the plaintiff is permitted to refile his claim in state court, either as a class action or on an individual basis.

## ORDER

**AND NOW**, this **30th** day of **September, 2024**, upon consideration of Defendant National Republican Congressional Committee's Motion to Dismiss Plaintiffs Complaint (ECF No. 20), Plaintiffs' Response in Opposition to Defendant's Motion to Dismiss (ECF No. 21), Defendant National Republican Congressional Committee's Reply in Support of Its Motion to Dismiss (ECF No. 23), and after consideration of the representations made by counsel at oral argument held on May 18, 2023, it is hereby **ORDERED** that the motion is **GRANTED**.

**IT IS FURTHER [\*24]  ORDERED** as follows:

1. The plaintiff's claims brought pursuant to the Telephone Consumer Protection Act in the First and Second Causes of Action are **DISMISSED WITH PREJUDICE**.

2. The plaintiffs intrusion upon seclusion claim asserted in the Third Cause of Action is **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

3. The Clerk is **DIRECTED to CLOSE** this action.

**BY THE COURT**:

/s/ Kai N. Scott

**HON. KAI N. SCOTT**

**United States District Court Judge**

---

**End of Document**