IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MARK ANTHONY ORTEGA, | § | |
| | § | |
| *Plaintiff,* | § | SA-24-CV-00487-OLG |
| | § | |
| vs. | § | |
| | § | |
| SIENNA MARKETING & | § | |
| CONSULTING INC., | § | |
| | § | |
| *Defendant.* | § | |
| | § | |
| | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Orlando Garcia:**

This Report and Recommendation concerns Defendant's Motion to Dismiss Plaintiff's First Amended Complaint for Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6) [#12]. All pretrial matters in this case have been referred to the undersigned for disposition pursuant to Western District of Texas Local Rule CV-72 and Appendix C [#23]. The undersigned has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it is recommended that the motion to dismiss be **GRANTED IN PART AND DENIED IN PART**.

## I.    Background

This case arises out of unauthorized telephonic communications Plaintiff Mark Ortega alleges receiving from Defendant Sienna Marketing & Consulting, Inc. ("Sienna"). Mr. Ortega has sued Sienna on behalf of himself and similarly situated individuals, seeking class certification. He alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, and of the Texas Business and Commerce Code § 301 *et seq*. The live pleading is the

First Amended Class Action Complaint [#9]. Defendant, in compliance with Judge Garcia's Standing Order, filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) [#12]. Mr. Ortega responded [#13], and Defendant replied [#14]. The motion is therefore ripe for the Court's review.

## II.     Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Although a complaint "does not need detailed factual allegations," the "allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations pleaded must show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (internal quotation omitted). However, a Court need not credit conclusory allegations or allegations that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678). In short, a claim should not be dismissed unless the court determines that it is beyond doubt that the plaintiff cannot prove a plausible set of facts that support the claim and would justify relief. *See Twombly*, 550 U.S. at 570.

### III.    Allegations in the First Amended Class Action Complaint

Mr. Ortega alleges that he is an individual living in the Western District of Texas with the phone number (210) 744-XXXX. (First Am. Compl. [#9], ¶¶ 1, 13.) He states that he registered this phone number with the National Do Not Call Registry on or about January 23, 2012, to "avoid receiving unwanted telemarketing and solicitation calls." (First Am. Compl. [#9], ¶¶ 16–17.) He alleges that he uses this phone number "primarily for residential purposes," such as "personal calls, text messaging with family and friends, and managing his personal affairs." (First Am. Compl. [#9], ¶¶ 14–15.)

On March 7, 2024, Mr. Ortega allegedly received an "unsolicited telemarking call to his cell phone" from Defendant. (First Am. Compl. [#9], ¶ 22.) He pleads that he has never expressly consented to being contacted by Defendant, nor does have an "existing business relationship with Defendant." (First Am. Compl. [#9], ¶¶ 18–19.) He claims that when he answered the call, there was "a distinct pause and delay before anyone answered." (First Am. Compl. [#9], ¶ 23.) Mr. Ortega alleges that this "distinct pause and delay before a live representative answered Plaintiff's call demonstrates that the dialing system used possessed the present capacity to store or produce telephone numbers and dial those numbers automatically. This shows that the system was working through a list of numbers and not operating under the direct control of a human caller for each individual call." (First Am. Compl. [#9], ¶ 24.)

Mr. Ortega claims that he "went through the telemarketing process so he could identify the company" calling him, as no company was identified through caller ID or at the beginning of the call. (First Am. Compl. [#9], ¶ 26.) After answering questions, he was purportedly "transferr[ed] . . . to an agent of Defendant." (First Am. Compl. [#9], ¶ 25.)

On that same day, Mr. Ortega "received a text message from Defendant Sienna's agent, Vincent Palazzo," with the agent's contact information. (First Am. Compl. [#9], ¶ 27.) Mr. Ortega responded to the text message stating, "Stop I'm not interested and on the do not call list. Don't contact me anymore." (First Am. Compl. [#9], ¶¶ 27, 33.) Then the next day—"a day after Plaintiff explicitly revoked consent to be contacted"—Mr. Ortega alleges that the agent continued to text him. (First Am. Compl. [#9], ¶ 29.) The two messages after Mr. Ortega revoked his consent state, "I'm confused" and "Did we not talk about funding for inventory?" (First Am. Compl. [#9], ¶¶ 30, 33.) Mr. Ortega did not answer these text messages. (First Am. Compl. [#9], ¶¶ 31, 33.) Defendant's agent then purportedly "attempt[ed] to re-engage Plaintiff" by sending him seven more messages that day, including the message "Mark," followed by, "It's Vince." (First Am. Compl. [#9], ¶¶ 31, 33.) Mr. Ortega alleges that Defendant's agent "chose to disregard the request [to stop contacting him] and continued attempting to pursue a business relationship with Plaintiff." (First Am. Compl. [#9], ¶ 32.) Mr. Ortega pleads that these "unauthorized telephonic communications . . . have harmed [him] in the form of annoyance, nuisance, and invasion of privacy, and occupied and otherwise disturbed the use and enjoyment of his phone." (First Am. Compl. [#9], ¶ 34.)

## IV.    Analysis

Mr. Ortega brings claims under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") and Texas Business and Commerce Code § 301 *et seq*. He alleges that Defendant violated these laws by contacting him despite his phone number being on the National Do Not Call Registry; contacting him using an automatic telephone dialing system; calling him without properly implementing the required internal do-not-call list procedures; and soliciting

him within Texas without a "registration certificate." Defendant Sienna seeks dismissal of all claims. The Court should grant in part and deny in part Defendant's motion to dismiss.

### A.  <u>Plaintiff's Class Claims</u>

As an initial matter, Plaintiff's class allegations and claims on behalf of other class members should be dismissed. A *pro se* plaintiff cannot represent class members. *See* Adequacy of class counsel under Rule 23(a)(4)—Class representatives proceeding pro se, 1 Newberg and Rubenstein on Class Actions § 3:79 (6th ed.) (". . . [C]ourts uniformly reject motions for class certification filed by a *pro se* litigant."); *Hennessey v. Blalack*, 35 F.3d 561, *1 (5th Cir. 1994) (unpublished table decision) (holding that the district court did not abuse its discretion in finding that the *pro se* plaintiff could not adequately represent a class); *Gonzales v. Cassidy*, 474 F.2d 67, 72 (5th Cir. 1973) (explaining that whether a plaintiff would be an "adequate [class] representative" turns in part on whether "the representative will vigorously prosecute the interests of the class *through qualified counsel*") (emphasis added).

### B.  <u>Plaintiff's 47 U.S.C. § 227(c) Claim</u>

The Court should deny Defendant's motion to dismiss Plaintiff's 47 U.S.C. § 227(c) claim. This statute regulates telemarketing practices to protect the privacy rights of those with residential phone numbers registered with the National Do Not Call Registry. Section 227(c)(5) provides a private right of action for a "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5). Mr. Ortega alleges that his phone number, which he uses "primarily for residential purposes," has been registered with the National Do Not Call Registry since 2012 and that Defendant's conduct thus violated § 227(c). (First Am. Compl. [#9], ¶¶ 14–16, 55.)

Defendant's motion to dismiss argues that Mr. Ortega cannot bring a do-not-call claim under the TCPA because he "holds the phone number out to the public as a business number." The Federal Communications Commission ("FCC"), which was authorized by Congress to create the National Do Not Call Registry and adopt rules necessary to protect privacy rights, 47 U.S.C. § 227(c)(1)–(3), adopted a rule that the Registry "applies to calls to 'residential subscribers' and does not preclude calls to businesses." *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 20 F.C.C. Rcd. 3788, 3793 (2005) (citing *In Re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039–40 (2003)). If a business number is listed on the Registry, "calls to such numbers will not be considered violations of [the FCC's] rules." *Id.* Additionally, recognizing that "whether any particular wireless subscriber is a 'residential subscriber' may be more fact-intensive than making the same determination for a wireline subscriber," the FCC enacted a presumption that cell phone users on the Do Not Call Registry are "residential subscribers." *In Re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003).

At this stage in the litigation where the Court is limited to evaluating the pleadings and does not have an evidentiary record, it would not be proper to decide whether Mr. Ortega's phone number is a business number or a personal/residential number for TCPA purposes. As the FCC has acknowledged, whether a cell phone is "residential" is a "fact-intensive" inquiry. *See id.* This is a summary-judgment issue.

Even though Defendant is arguing for a 12(b)(6) dismissal, Defendant cites a case—a district court, out-of-Circuit, unpublished case—decided in a summary-judgment posture in support of its argument. *Bank v. Indep. Energy Grp. LLC*, No. 12-CV-1369, 2014 WL 4954618, at *4 (E.D.N.Y. Oct. 2, 2014). But even that court refused to dismiss the claim without an

evidentiary record. *Id.* ("Whether [the plaintiff's] phone number is used for [the plaintiff's] business and thus falls outside the protections of the TCPA cannot be resolved without some limited discovery."). The Court should therefore deny the motion to dismiss the § 227(c) claim.

C.     **Plaintiff's 47 U.S.C. § 227(b) Claim**

The Court should grant Defendant's motion to dismiss Mr. Ortega's claim under 47 U.S.C. § 227(b). Mr. Ortega alleges that Defendant used an automatic telephone dialing system ("ATDS") when it called him in violation of § 227(b). Under § 227(b), it is unlawful to use an ATDS to call the cell phone number of an individual located in the United States.[1] 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA defines an ATDS as equipment with the capacity both "to store or produce telephone numbers to be called, using a random or sequential number generator," and "to dial such numbers." 47 U.S.C. § 227(a)(1).

The Supreme Court has clarified the definition of what qualifies as an ATDS. *See generally Facebook, Inc. v. Duguid*, 592 U.S. 395 (2021). According to the Supreme Court, the term ATDS encompasses only equipment that has "the capacity *either* to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." *Id.* at 399 (emphasis added). If the equipment only stores and automatically dials numbers but does not randomly generate those numbers, it is not a prohibited ATDS under the Act. *Id.* In other words, "in all cases, whether storing or producing numbers to be called, the equipment in question must use a random or sequential number generator." *Id.* at 404.

Mr. Ortega does not plead sufficient facts from which the Court may infer Defendant used an ATDS as defined in *Duguid*. Mr. Ortega alleges that the "distinct pause and delay" he

---

[1] Though there are some exceptions to this rule, any exceptions are not at issue in this case.

heard supports the conclusion that Defendant was using a dialing system that "possessed the present capacity to store or produce telephone numbers and ***dial those numbers automatically***." (First Am. Compl. [#9], ¶¶ 23–24) (emphasis added). He then pleads, "This shows that the system was ***working through a list of numbers*** and not operating under the direct control of a human caller for each individual call." (First Am. Compl. [#9], ¶ 24) (emphasis added). These allegations are fatal to his § 227(b) claim under *Duguid*.

Mr. Ortega claims to the contrary that, even under *Duguid*, equipment that uses a random or sequential number generator to select numbers to dial from a stored list qualifies as an ATDS. (Pl. Resp. [#13], at 5–6.) This is a misreading of *Duguid*. Though he does not cite directly to it, Mr. Ortega may be relying on footnote seven in *Duguid*, which states that "an autodialer might use a random number generator to determine the order in which to pick phone numbers from a preproduced list." *Duguid*, 592 U.S. at 407 n.7. Yet, as multiple circuit and district courts have explained, using this quote to avoid the clear requirement of the Supreme Court that an ATDS employ a random or sequential generator is misplaced. *See, e.g.*, *Soliman v. Subway Franchisee Advert. Fund Tr., LTD.*, 101 F.4th 176, 185–86 (2d Cir. 2024); *Borden v. eFinancial, LLC*, 53 F.4th 1230, 1235–36 (9th Cir. 2022); *Beal v. Outfield Brew House, LLC*, 29 F.4th 391, 396 (8th Cir. 2022).

Footnote seven appears in a section of the *Duguid* opinion addressing and rejecting Duguid's counterargument that the phrase "using a random or sequential number generator" modifies only the term "produce," and not "store" in the TCPA's definition of ATDS. *See Duguid*, 592 U.S. at 406–407. Footnote seven explains how an autodialer might both "store" and "produce" randomly or sequentially generated phone numbers, in the context of a discussion

about technology patented in the late 1980s addressed in an amicus brief. *See id.* In dismissing

the counterargument, the Supreme Court stated,

> It is true that, as a matter of ordinary parlance, it is odd to say that a piece
> of equipment "stores" numbers using a random number "generator."  But
> it is less odd as a technical matter. Indeed, as early as 1988, the U.S.
> Patent and Trademark Office issued patents for devices that used a random
> number generator to store numbers to be called later (as opposed to using
> a number generator for immediate dialing).

*Id.* Reading footnote 7 in context, it is clear that the preproduced list of phone numbers

referenced therein was itself created through a random or sequential number generator. *Id.* at 407

n.7; *Beal*, 29 F.4th at 396 ("The hypothetical system considered by the Court [in footnote seven]

was a system in which numbers were sequentially generated before being stored and later

randomly selected.")

In summary, what is clear after *Duguid* is that a preproduced list that is not sequentially

generated or stored cannot be considered an ATDS under the TCPA. *See Meier v. Allied*

*Interstate LLC*, 2022 WL 171933, at *1 (9th Cir. Jan. 19, 2022) (mem.) (rejecting, in light of

*Duguid*, the argument that any system that stores a pre-produced list of telephone numbers and

that could also autodial these stored numbers is an ATDS). This is "precisely the outcome the

Supreme Court rejected in *Duguid* when it overturned a decision . . . holding that an ATDS 'need

only have the capacity to store numbers to be called and to dial such numbers automatically.'"

*Id.*

Mr. Ortega has solely pleaded that Defendant's "system was working through a list of

numbers" and could "dial those numbers automatically." (First Am. Compl. [#9], ¶ 24.) He does

not plead that the system had "the capacity either to store a telephone number using a random or

sequential generator or to produce a telephone number using a random or sequential number

generator." *See Duguid*, 592 U.S. at 399. Mr. Ortega has already had an opportunity to replead. Thus, the Court should grant Defendant's motion to dismiss Mr. Ortega's § 227(b) claim.[2]

### D.    Plaintiff's 47 C.F.R. § 64.1200 Claims

The Court should deny Defendant's motion to dismiss both of Mr. Ortega's claims under 47 C.F.R. § 64.1200(d) and the TCPA's implementing regulations.[3] Section 64.1200(d) requires that people or entities making calls for telemarketing purposes to residential numbers have "instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity." 47 C.F.R. § 64.1200(d). One of the "minimum standards" of these internal do-not-call list procedures is that, when an individual makes such a request, the person or entity must "honor" the "do-not-call request within a reasonable time from the date is made. This period may not exceed 30 days from the date of such request." *Id.* § 64.1200(d)(3).

First, Mr. Ortega alleges that Defendant called him "without implementing internal procedures for maintaining a list of persons who request not to be called by the entity." (First Am. Compl. [#9], ¶ 65.) Construing this allegation as true, these pleadings are (barely) sufficient. If Defendant indeed has the requisite procedures, this will be quickly sorted out in discovery and resolved at summary judgment. Thus, the Court should deny Defendant's motion to dismiss Mr.

---

[2] Defendant argues in its motion to dismiss that Mr. Ortega alleged in his original complaint that Defendant used a lead services generator to identify him as a potential customer, but then—in bad faith—did not include that allegation in his First Amended Complaint to avoid a dismissal under *Duguid*. (Mot. to Dismiss [#12], at 4–5.) Because Mr. Ortega's cause of action under § 227(b) fails under *Duguid* even without the allegation that Defendant used lead services to contact him, the undersigned does not reach whether he amended his complaint in bad faith.

[3] District courts "within the Fifth Circuit have agreed that § 64.1200(d) was promulgated under § 227(c), and that there is a private right of action." *See Powers v. One Techs., LLC*, No. 3:21-CV-2091, 2022 WL 2992881, at *2 (N.D. Tex. July 28, 2022) (collecting cases).

Ortega's claim that Defendant has not instituted written procedures for an internal do-not-call list as required by § 64.1200(d).

Second, Mr. Ortega argues in the alternative that Defendant violated § 64.1200(d) by "implementing procedures that do not meet the minimum requirements" of the regulation. (First Am. Compl. [#9], ¶ 65.) He claims that this is a reasonable inference based on his allegations that (1) he was texting directly with an agent of Defendant; (2) he explicitly asked the agent to not contact him again; (3) Defendant could have immediately complied with the request; and (4) Defendant's agent continued to send him text messages despite the explicit request to stop contacting him. (First Am. Compl. [#9], ¶¶ 27–29.)

Defendant contends in its motion that the regulation, § 64.1200(d)(3), provides it with a "30-day-grace period . . . to honor requests" to be added to the entity's internal do-not-call list. This is a misreading of the regulation. It clearly states that the required procedures must include that requests will be honored "*within a reasonable time . . . . not to exceed 30 days*." 47 C.F.R. § 64.1200(d)(3) (emphasis added). Within a reasonable time not to exceed thirty days is *not* the same as giving entities thirty days to comply; rather, what is "reasonable" will depend on the specific facts at issue in a given case. Viewing the allegations in the light most favorable to Mr. Ortega, it is a reasonable inference that Defendant has not properly implemented procedures that meet the minimum requirements of § 64.1200(d)(3). The Court should therefore deny Defendant's motion to dismiss this claim and allow it to go forward.

### E.  Plaintiff's Claims Under The Texas Business and Commerce Code

The Court should deny Defendant's motion to dismiss Mr. Ortega's claims under Texas Business and Commerce Code § 302.101 and § 305.053. Section 302.101 requires sellers that make a telephone solicitation from a location in Texas or to a purchaser located in Texas to

"hold[] a registration certificate for the business location from which the telephone solicitation is made." Tex. Bus. & Comm. Code § 302.101(a). Mr. Ortega asserts that Defendant does not have the registration certificate required by § 302.101. Defendant argues that this claim should be dismissed because that statute does not apply to text messages, as a "telephone solicitation" is defined as a "telephone call." Even if this interpretation of the statute is correct, Defendant fails to address that Mr. Ortega has alleged Defendant *did* call him—before the text messages began. Mr. Ortega pointed this out in his response to the motion to dismiss, but Defendant disregarded this issue in its reply. Because Mr. Ortega has sufficiently pleaded that Defendant called him without the required registration certificate, the Court should deny the motion to dismiss Mr. Ortega's § 302.101 claim.

Regarding Mr. Ortega's second claim under Texas law, Section 305.053 provides a cause of action for violations of the TCPA. Defendant argues that, because Mr. Ortega did not plausibly allege a violation of the TCPA, his § 305.053 claim should be dismissed. As discussed above, the undersigned has found that Mr. Ortega plausibly alleged a violation of 47 U.S.C. § 227(c). Thus, Mr. Ortega has plausibly alleged a cause of action here as well. Accordingly, the Court should deny the motion to dismiss Mr. Ortega's § 305.053 claim.

### V.   <u>Conclusion and Recommendation</u>

Having considered Defendant's motion, the response and reply thereto, the pleadings, and the governing law, the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss Plaintiff's First Amended Complaint for Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6) [#12] be **GRANTED IN PART** and **DENIED IN PART**, and specifically that:

- Plaintiff's class allegations and claims on behalf of class members should be dismissed;

- Plaintiff's cause of action under 47 U.S.C. § 227(b) should be dismissed;

- Plaintiff's remaining claims should proceed without prejudice to Defendant moving for summary judgment on an evidentiary record.

## VI.    Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The party shall file the objections with the Clerk of Court and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1).

SIGNED this 4th day of March, 2025.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE