**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS SAN ANTONIO DIVISION**

| | |
|---|---|
| MARK ORTEGA, §<br>§<br>Plaintiff, §<br>§<br>vs. §<br>§<br>SIENNA MARKETING & CONSULTING, INC. §<br>a New York Corporation and VINCENT §<br>PALAZZO, §<br>§<br>Defendants. §<br>§<br>§<br>§ | Case No. 5:24-CV-00487-OLG |

**DEFENDANTS SIENNA MARKETING & CONSULTING, INC.**
**AND VINCENT PALAZZO'S MOTION FOR SUMMARY JUDGMENT**

164425.00001/156876420v.1

**TABLE OF CONTENTS**

                                                                                           **Page**

INTRODUCTION ........................................................................................................ 1

PROCEDURAL POSTURE ...................................................................................... 3

STATEMENT OF MATERIAL UNDISPUTED FACTS ........................................ 4

    A.    Defendants' Communications with Ortega and His Consent to Receive
          Communications. ......................................................................................... 4

    B.    Undisputed Record Evidence Obtained During the Limited Discovery
          Period Demonstrates the Consistent use of the 9663 Number for Business
          Purposes. ...................................................................................................... 6

LEGAL STANDARD ............................................................................................... 10

ARGUMENT ............................................................................................................ 11

    I.    Plaintiff Routinely Held the 9663 Number Out to the Public as a
          Business Number; As Such, It Cannot be Protected Under the
          TCPA or TTSA. ........................................................................................... 11

    II.    Ortega Has Not Suffered an Injury-In-Fact Sufficient to Bring His
          TCPA Claims. .............................................................................................. 13

    III.    Sienna Is Entitled to the Safe Habor Provision for Claims Under 47
          C.F.R. 64.1200(d) Because it Had a Do-Not-Call Policy in Place
          Before the Subject Call. .............................................................................. 15

    IV.    Ortega Provided Consent for the Subject Communications and/or
          Entered into a Business Relationship Preventing Him from
          Bringing TCPA and TTSA Claims. ........................................................... 17

    V.    Defendants are Exempt from the TTSA's Registration Requirement
          Because they Did not And Could Not Complete the Transfer of
          Funds or Obtain Provisional Acceptance of a Sale During the
          Single Call with Ortega and The Text Message Communications
          are Not Subject to the TTSA's Registration Requirements...................... 18

CONCLUSION.......................................................................................................... 20

164425.00001/156876420v.1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atkinson v. Pro Custom Solar LLC*,
2022 WL 407198 (W.D. Tex. Sep. 1, 2022)........................................................................10, 18

*Bank v. Independence Energy Group LLC*,
2015 WL 4488070 (E.D. NY Jul. 23, 2015).........................................................................11, 13

*Bradford v. Sovereign Pest Control of TX, Inc.*,
744 F. Supp. 3d 754 (S.D. Tex. Aug. 10, 2024) .................................................................10, 17

*Charvat v. ATW, Inc.*,
712 N.E.2d 805, 807 (Ohio App. 1998).....................................................................................17

*Charvat v. GVN Michigan, Inc.*,
561 F.3d 623 (6th Cir. 2009) .....................................................................................................15

*Chennette v. Porch.com, Inc.*,
2020 WL 9078129 (D. Idaho, Nov. 2, 2020)......................................................................11, 12, 13

*Ecommerce Marketers Alliance, Inc. v. Texas*,
1:25-cv-1401-RP..........................................................................................................................19

*Morgan v. Medtronic, Inc.*,
172 F. Supp. 3d 959 (S.D. Tex. Mar. 23, 2016) ........................................................................9

*Neria v. Dish Network LLC*,
2020 WL 3403074 (W.D. Tex. Jun. 19, 2020) ..........................................................................16

*Shelton v. Target Advance LLC*,
2019 WL 1641353 (E.D. Pa. Apr. 16, 2019) ......................................................................11, 13

*Shields v. Gak Inc.*,
2019 WL 1787781 (S.D. Tex. Apr. 24, 2019) ...........................................................................17

*Simmons v. Charter Commcn's, Inc.*,
222 F. Supp. 3d 121 (D. Conn. Mar. 30, 2016) ................................................................15, 16

*Stoops v. Wells Fargo Bank, N.A.*,
197 F. Supp. 3d 782 (W.D. Pa. Jun. 24, 2016) .........................................................................13

*Suttles v. Facebook, Inc.*,
461 F. Supp. 3d 479 (W.D. Tex. May 20, 2020) ...............................................................12, 13

164425.00001/156876420v.1

*Triple Tee Golf, Inc. v. Nike, Inc.*,
    486 F.3d 253 (5th Cir. 2007) ......................................................................................10

**Statutes**

47 U.S.C. § 227(b) ............................................................................................................3

Tex. Bus. & Com. Code § 304.........................................................................................19

V.T.C.A.
    § 302.059(1)(A) .....................................................................................................3, 18
    § 302.101................................................................................................................18
    § 305.001................................................................................................................18

**Other Authorities**

47 C.F.R.
    § 64.1200(c)(2)(i)....................................................................................................15
    § 64.1200(d).............................................................................................3, 4, 14, 15

Fed. R. Civ. P. § 56(a) .....................................................................................................10

*In the Matter of R. and Regulations Implementing the Tel. Consumer Protect. Act
    of 1991*,
    23 F.C.C. Rcd. 9779 (F.C.C. 2008) ...................................................................11, 13

164425.00001/156876420v.1

Defendants Sienna Marketing & Consulting, Inc. ("Sienna") and Vincent Palazzo ("Palazzo," and with Sienna, the "Defendants"), by their undersigned counsel, move for summary judgment on Plaintiff Mark Ortega's ("Plaintiff" or "Ortega") claims asserted in the *Second Amended Complaint* (the "SAC") (ECF No. 58) under Federal Rule of Civil Procedure 56(a).

## INTRODUCTION

Ortega, a serial filer of actions arising under the Telephone Consumer Protection Act ("TCPA") and the Texas Telephone Solicitation Act ("TTSA"), brings the instant action against Defendants asserting a single phone call and several text messages sent on March 7-8, 2024, violated the TCPA and TTSA. Based on the undisputed record, Ortega is wrong as a matter of law.

Several factors foreclose Ortega's claims. This includes: (1) how Ortega held his phone number out to the public as a business line associated with his myriad business interests; (2) Ortega consented to the communications; and (3) Ortega's status as a serial filer of TCPA/TTSA claims.

Recognizing the alleged deficiencies in Ortega's claims, this Court allowed bifurcated discovery to determine, as a threshold issue, if Ortega is entitled to protection under the TCPA and TTSA. The discovery obtained from Ortega, described below, forecloses any such right to relief.

*First*, it is undisputed that Ortega held his cellphone number out to the public as a *business number* associated with his *multiple* businesses. This is a complete defense to his TCPA claim under the do-not-call ("DNC") regulations, as business numbers are not permitted to be registered on the DNC registry. Said differently, as a number associated with a business, it never should have been on the DNC registry in the first place. As shown, Ortega had significant communications with third parties on behalf of his businesses using his cellphone. This included negotiations with more than a *dozen* third parties from which Ortega sought financing—*i.e.*, the same conduct that forms the basis for the claims here—for at least three of his businesses. Moreover, Ortega submitted *multiple* filings to the State of Texas identifying his cellphone number as being

1

associated with at least one of his businesses.  And Ortega conceded he had several voice-over-internet-protocol ("VOIP") numbers associated with his businesses; calls to those VOIP numbers also routed to his cellphone.  As the TCPA/TTSA are intended to protect only *residential* telephone subscribers—not business numbers, as seen here on this undisputed record—this claim fails as a matter of law.

*Second*, Ortega admitted that after speaking with Palazzo on the initial call, he "feigned" interest in Sienna's services to goad Defendants into following up with him via text message.  In doing so, Ortega affirmatively consented to further contact from Defendants.  Because Ortega solicited additional communications from Defendants—even though he already had information sufficient to identify them—Ortega thus invited and consented to the subsequent communications. Ortega should not be allowed to profit from such communications he intentionally manufactured.

*Third*, Ortega testified his current business interests are winding down.  At the same time, Ortega has filed at least *twenty (20)* TCPA/TTSA suits in the last few years.  As such, there is no doubt Ortega uses the TCPA and TTSA as his primary source of income.  Courts have held individuals who, like Ortega, try to game the system and use the TCPA as a money-making scheme are *not* entitled to protection under the TCPA as their privacy interests have not been breached.

*Fourth*, Defendants are separately entitled to the TCPA's safe harbor protections.  During discovery, Sienna provided its Do-Not-Call Policy to Ortega—which it maintains and uses to train its callers to comply with the law.  This Do-Not-Call Policy, and the actions taken by Defendants in furtherance thereof, entitles Defendants to the safe-harbor provisions of the TCPA.  Ortega has not shown any purported inadequacy with this policy—other than baldly arguing that since he received communications from Defendants, the policy must not have been followed.  But that is not how the safe harbor protections operate; thus, Ortega's TCPA claims also fail on this basis.

*Fifth*, in addition to the defenses outlined above regarding consent and Ortega's use of his cellphone in his businesses (which operate as a total defense to Count III), Defendants are exempt from the registration certification requirements under the TTSA because they did not attempt to complete or obtain provisional acceptance of a sale of any goods or services on the call with Ortega.  As evidenced by the transcript of the phone call on March 7, 2024, and the later texts, should Ortega have wished to move forward with the offered financial services, he would have needed to submit bank statements and be subject to an underwriting process.  As a result, Defendants are exempt from the TTSA's registration requirements under V.T.C.A. § 302.059(1)(A).  Defendants are entitled to summary judgment, and this case should be dismissed.

## PROCEDURAL POSTURE

Ortega filed his initial Complaint on May 13, 2024.  (ECF No. 1.)  In response to Sienna's Motion to Dismiss (ECF No. 12), on March 4, 2025, Magistrate Judge Elizabeth S. Chestney issued a Report and Recommendation ("R&R") denying in part and granting in part the Motion to Dismiss.  (ECF No. 25.)  Relevant to Defendants' business number defense, this Court observed:

> At this stage in the litigation where the Court is limited to evaluating the pleadings and does not have an evidentiary record, it would not be proper to decide whether Mr. Ortega's phone number is a business number or a personal/residential number for TCPA purposes.  As the FCC has acknowledged, whether a cell phone is "residential" is a "fact-intensive" inquiry[.] ***This is a summary judgment issue.***

*Id.* at 6 (emphasis added).

As part of the R&R, Magistrate Judge Chestney recommended Ortega's class claims and claims under 47 U.S.C. § 227(b) for the purported use of an automatic telephone dialing system be dismissed.  *Id*. at 5, 7-9.  Based solely on the pleadings, the R&R did not dismiss Ortega's claims under 47 C.F.R. § 64.1200(d), which requires that entities making calls for telemarketing purposes to residential numbers have "instituted procedures for maintaining a list of persons who

3

request not to receive such calls made by or on behalf of that person or entity." *Id.* at 10.  The R&R observed that "[c]onstruing this allegation as true, these pleadings are (barely) sufficient.  If [Sienna] indeed has the requisite procedures, this will be quickly sorted out in discovery and resolved at summary judgment." *Id.*  Judge Orlando L. Garcia adopted the R&R on March 21, 2025.  (ECF No. 27.)

Thereafter, Sienna requested that discovery on Ortega's use of his cellphone for business purposes proceed before discovery into other matters.  (ECF No. 28.)  Magistrate Judge Chestney then entered an Order whereby "the first phase of discovery be limited to whether Plaintiff held his phone number out to the public as a business number… [as] the Court finds that discovery on this issue *could greatly streamline the litigation*."  (ECF No. 33) (emphasis added).  On November 3, 2025, Ortega filed the operative SAC, (ECF No. 58), and added Palazzo as a named Defendant.

## STATEMENT OF MATERIAL UNDISPUTED FACTS

**A.      Defendants' Communications with Ortega and His Consent to Receive Communications.**

Sienna offers various small business lending services and uses phones to start or complete various business functions.  ECF No. 61, ¶¶ 11-12.  On March 7, 2024, Defendant Palazzo made a call to Ortega on Ortega's cellphone number (210)-744-9663 (the "Call").  (*Id.* ¶¶ 15, 23.)

Per its usual practices, Sienna recorded the Call and produced the recording in discovery. (Oct. 21, 2025, Dep. Transcript of Ortega, attached as **Exhibit 1**, 187:16-188:1.)  During the five+ minute Call, Ortega represented he was interested in learning more about Defendants' services. (*Id.* at 192:12-20.)  Ortega did not say he was on a residential telephone line; rather, he discussed at least *two businesses*, MAO Real Estate LLC and Grovano Inc., with Palazzo.  (*Id.* at 200:3-15.)

Ortega expressly requested Defendants call him back to *continue* the discussion about Defendants' services, saying: "***Can you call me back or send me an e-mail***."  (*Id.* at 198:21-22)

4

(emphasis added).  On the Call, Palazzo also made clear that an agreement for the provision of Defendants' services could not be completed on the phone, but would need to be finalized later:

> Mr. Vincent: Yeah, so like I said, if you can get that over to me, that plan option, that will be tomorrow - - I'm east coast. Wire cuts off around 5 p.m. I need a couple of hours to have the underwriting team go over it. It's like another 20, 30 minutes. It's about 7 o'clock over here. So, yeah, if you can get that over to me tonight, I can definitely have options for you. If not, first thing in the morning will be good. I'll work something out for you.
>
> Mr. Ortega: ***Okay Cool.***
>
>     […]
>
> Mr. Vincent: ***I will shoot you a text, Mark***. I'll let you know that everything is on course.
>
> Mr. Ortega: ***Okay***.

(*Id*. at 201:2-202:4) (emphasis added); (ECF No. 58 ¶ 35 (texting "Send me bank statements")).

Ortega admits he never asked Palazzo to stop calling him during the Call.  (*Id*. at 203:10-12).  Nor did Ortega inform Defendants his cellphone number was on the Do-Not-Call List on the Call.  (*Id.* at 204:11-13).  Ortega admitted he feigned interest in Defendants' services on the Call and ***routinely*** feigns interest on other calls to bait businesses into continuing discussions.  (*Id.* at 205:2-21) ("**Q:** So it's your position that you were feigning interest with Mr. Palazzo? **A:** Correct, to be able to receive identifying information about who was calling.").  Following Ortega's consent to further communications, Palazzo sent a text with his contact information.  (*Id.* at 210:17-21.) Three hours later, Ortega first requested further communications cease.  (*Id.* at 210:17-211:16.) What followed was a clearly flummoxed Palazzo ensuring Ortega had not confused him with someone else.  (ECF No. 61 ¶ 35) (Palazzo texting back "I'm confused," and "What changed?").

*    *    *

5

164425.00001/156876420v.1

**B.      Undisputed Record Evidence Obtained During the Limited Discovery Period Demonstrates the Consistent use of the 9663 Number for Business Purposes.**

After this Court allowed phased discovery on Ortega's use of his cellphone number, Sienna issued discovery requests including several sets of Interrogatories, Requests for Production, and Requests for Admission.  (ECF Nos. 39-1, 39-2, 39-3, 39-10, 39-11, 39-12, and 39-13.)

In response to these discovery requests, Ortega provided the following sworn answers:

- "[Ortega] has, on occasion, used this personal number [210-744-9663] for communications *concerning his entity MAO Real Estate LLC* within the last four years."  (ECF No. 39-4, Int. 1; a copy of which is attached hereto as part of **Group Exhibit 2**) (emphasis added);

- "The telephone number 210-744-9663 is currently [Ortega's] sole and only personal telephone number, which he uses primarily for personal communications. As it is his only number, *[Ortega] has also used it for occasional business-related communications concerning the following entities*:
    - MAO Real Estate LLC…
    - Ortega Capital Inc…
    - Grovano Inc…
    - Evergreen Capital LLC
    - Green Forest Capital LLC
    - HorizonWiz LLC

    [Ortega] further states that of these entities, only Grovano Inc., which operates a public-facing warehouse, maintains its own separate, dedicated business telephone lines for customer and public contact.  The other entities listed are primarily holding companies or ventures either without or very limited public-facing operations, for which Plaintiff uses his sole personal number for necessary contact.  (Ex. 2, ECF No. 39-4, Int. 2)[1];

- "*Within the last four years [Ortega] has used this personal phone number for SMS and iMessage communications, as well as for voice calls, with tenants/prospective tenants of properties owned by MAO Real Estate LLC[.]* (Ex. 2, ECF No. 39-4, Int. 7);

---

[1]  At his deposition, Ortega was asked how he came up with answers about his use of his cellphone "primarily for personal communications."  In response, Ortega conceded he did not tabulate a percentage of what calls were business calls and what calls were personal calls when reviewing his phone records. Moreover, when pressed to say which numbers in a given phone record from his service provider were business calls and which were personal, Ortega was unable to do so for a majority of the entries on the phone records discussed during the deposition.  (Ex. 1 at 256:7-267:19.)

164425.00001/156876420v.1

- "[Ortega], an individual, has on limited occasions *used his personal telephone number for communications related to the business of MAO Real Estate LLC*."  (ECF No. 39-8, RFA No. 12, a copy of which is attached hereto as part of **Group Exhibit 2**);

- In response to an interrogatory requesting the identity of the individuals with whom Ortega had "occasional business-related communications" using the phone number 210-744-9663, on behalf of his business entities, Ortega identified the following:

"With respect to MAO Real Estate LLC, communications would have generally been with individuals such as tenants, prospective tenants, contractors, or vendors, and for a period, with virtual assistant Blanca DeLuna.

"With respect to Ortega Capital Inc, communications would have generally been with individuals such as tenants, prospective tenants, contractors, or vendors, and for a period, with virtual assistant Blanca DeLuna.

"For Evergreen Capital LLC, communications would have generally been with individuals such as tenants, prospective tenants, contractors, or vendors, and partner Shawn Whitehorn.

"For Green Forest Capital LLC, communications would have generally been with individuals such as virtual assistants and partner Joseph Llerena.

"For HorizonWiz LLC, communications would have generally been with individuals such as partner Ayla Melendez.

"For Grovano Inc, communications would have generally been with individuals such as virtual assistants and employees.

"For LiquidationSA, communications would have generally been with individuals such as virtual assistants, employees, and partner Javier Bocanegra."

(A copy of Ortega's Objections and Answers to Defendant's Second Set of Interrogatories is attached hereto as part of Group **Exhibit 2**, No. 10.)[2]  As of his October 21, 2025, deposition, Ortega was self-employed with several of his businesses, including Ortega Capital Inc., MAO Real Estate LLC, Grovano Inc., and Green Forest Capital LLC.  (Ex. 1 at 26:1-15.)  As of his deposition,

---

[2]  Notably, Ortega shirked his discovery responsibilities throughout this case, forcing Sienna to file two motions to compel to receive the material in its possession.  (ECF Nos. 42 and 66.)  Ortega was also consistently evasive in his deposition answers.  (*See, e.g.*, Ex. 1 at 13:9-14:16; 19:12-23; 232:22-233:16.)

he was either working less than an hour a week or "almost never" for each of his business entities. (*Id.* at 26:16-27:19.)  At least one of his businesses (Grovano Inc.) is winding down.  (*Id.* at 173:13-14.)

Ortega's cellphone number, on which third-parties may reach him, is 210-744-9663 (the "9663 Number").  (Ex. 1, 37:11-21.)  In addition to using his 9663 Number in connection with his businesses, several of Ortega's businesses also used VOIP phone lines for marketing activities; calls to these VOIP business numbers would also ring to the 9663 Number.  (*Id.* at 48:20-49:10.)

> Q.   ***Did you ever answer any of these - - these VOIP lines on behalf of MAO Real Estate?***
> A.   Ever?
> Q.   Yes.
> A.   ***Yes.***
> Q.   And how did you do that?
> A.   That's going to be - - ***it would be ringing to my phone.***
> […]
> Q.   But my question is - - you said - - your answer was - - how - - how did you receive those calls? ***And your answer was: it ringed to your phone.***
> A.   ***To my phone.***
> Q.   ***Yeah, ring - - ring to my phone***. And so I'm asking you: what phone is that?
> A.   ***Yeah, it's going to be the nine - - the phone number ending in 9663***.

(*Id.* at 112:7-14; 113:8-15) (emphasis added).

Critically, Ortega further testified he made and received calls using his 9663 Number on behalf of at least three of his businesses to seek and obtain financing for those businesses.  (Ex. 1 at 132:9-185:14.)  This was not a one-off occurrence.  Indeed, Ortega had conversations on his 9663 Number with at least five (5) different individuals or entities while seeking, and obtaining, financing on behalf of Evergreen Capital; at least eleven (11) different individuals or entities while seeking, and obtaining, financing on behalf of MAO Real Estate LLC; and at least five (5) different individuals or entities while seeking, and obtaining, financing on behalf of Grovano Inc.  (*Id.*)

8

Ortega also personally prepared Texas State Franchise Tax Reports, such as the *2022 Annual No Tax Due Report*, on behalf of his business MAO Real Estate LLC (the "2022 Report").[3] (*Id.* at 302:25-303:25; 2022 Annual No Tax Due Report for MAO Real Estate LLC, attached as part of **Exhibit 3**). On the 2022 Report, Ortega listed the 9663 Number as being on behalf of MAO Real Estate LLC. (*Id.*) He again listed the 9663 Number on the 2017, 2018, 2020, and 2023 Annual No Tax Due Reports filed with the State of Texas (copies attached as part of **Group Exhibit 3)**.

Ortega routinely communicated with various third parties on behalf of his business entities, and listed the 9663 Number in his signature block on emails sent and received on behalf of those entities; so too did Ortega have the 9663 Number provided by his business associates to third-parties related to Ortega's businesses. (Ex. 1 at 305:2-307:24; 309:12-312:8; 312:12-314:5; 314:21-317:5.) This included emails sent by Ortega on behalf of: Grovano Inc. (*id.* at 305:2-307:24; 314:21-317:5); Evergreen Capital (*id.* at 309:12-312:8); and Green Forest Capital (*id.* at 312:12-314:5). (Copies of emails are attached as **Group Exhibit 4**.)[45] Ortega also communicated with various third parties on behalf of his businesses via text, once again using the 9663 Number for business purposes. (*Id.* at 319:25-322:20.) (Screenshots attached as **Group Exhibit 5**.)[6]

In addition to the instant action, Ortega has maintained at least twenty (20) other lawsuits alleging violations of the TCPA and TTSA since 2024. (Ex. 1 at 215:10-21; *id.* at 229-252.)

---

[3] This Court can take judicial notice of matters of public record, such as these publicly filed tax reports. *See Morgan v. Medtronic, Inc.*, 172 F. Supp. 3d 959, 963 (S.D. Tex. Mar. 23, 2016).

[4] Ortega validated each email during his deposition and produced them as part of Phase I of discovery. (*See* pages bates numbered MAO001502, MAO001503, MAI001508, and MAO001510).

[5] This Court had to compel Ortega to produce these emails and only ordered Ortega to produce a *sample* for each of his companies. (ECF No. 46.) As such, there are likely many more examples of business use.

[6] Ortega validated each text during his deposition and provided screenshots as part of Phase I discovery.

164425.00001/156876420v.1

Finally, Sienna maintains a Do-Not-Call Policy to comply with the TCPA and its enacting regulations about wired/wireless telephone communications to any covered telephone line or number. (A copy of Sienna's Do-Not-Call Policy is attached hereto as **Exhibit 6**; *see also Declaration of Bruno Scotti*, attached hereto as **Exhibit 7**.) Ortega was provided a copy of Sienna's Do-Not-Call Policy at his deposition on October 21, 2025. (Ex. 1 at 207:1-23.)

## LEGAL STANDARD

"Summary judgment is warranted 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Bradford v. Sovereign Pest Control of TX, Inc.*, 744 F. Supp. 3d 754, 758 (S.D. Tex. Aug. 10, 2024), *quoting* FED. R. CIV. P. 56(a). "A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Atkinson v. Pro Custom Solar LLC*, 2022 WL 407198, at *2 (W.D. Tex. Sep. 1, 2022). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *See Triple Tee Golf, Inc. v. Nike, Inc.*, 486 F.3d 253, 261 (5th Cir. 2007) (citation omitted).

"Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the court should not grant the motion. The non-movant then must provide specific facts showing that there is a genuine dispute." *Bradford*, 744 F. Supp. 3d at 758. "The key question on summary judgment is whether there is evidence raising an issue of material facts upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party." *Id*. "The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial. The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence." *Atkinson*, 2022 WL 4071998, at *2.

10

**ARGUMENT**

**I.    Plaintiff Routinely Held the 9663 Number Out to the Public as a Business Number; As Such, It Cannot be Protected Under the TCPA or TTSA.**

It is well established that "the National Do-Not-Call Registry applies to 'residential subscribers' and does not preclude calls to businesses. To the extent that some business numbers have been inadvertently registered onto the national registry, calls made to such numbers will not be considered violations of our rules." *In the Matter of R. and Regulations Implementing the Tel. Consumer Protect. Act of 1991*, 23 F.C.C. Rcd. 9779, 9785 (F.C.C. 2008). When a plaintiff tries to bring claims under the TCPA for a number used for business purposes, the claim will fail due to a lack of standing. *Shelton v. Target Advance LLC*, 2019 WL 1641353, at *6 (E.D. Pa. Apr. 16, 2019) (plaintiff lacked standing to bring TCPA claims because he also used his number for business and "business numbers are not permitted to be registered on the National Do-Not-Call Registry").

That a plaintiff used his or her phone number for both business and residential purposes cannot support TCPA liability. *Bank v. Independence Energy Group LLC*, 2015 WL 4488070, at *2 (E.D. NY Jul. 23, 2015). In *Bank*, the plaintiff registered his number with his telephone service provider as a residential line. *Id.* at *1. At summary judgment, the facts revealed plaintiff used his number in association with his law practice, including: (1) listing the number on his business card; (2) listing the number in professional correspondence; (3) listing the number as part of court filings; and (4) listing his number in registrations with the state court systems. *Id.* Plaintiff in turn argued he used his subject telephone number for both personal *and* business purposes. *Id.* But the court rejected this argument, granting summary judgment to the defendant as "no reasonable juror could find that the Subject Telephone is residential" based upon the facts presented. *Id.* at *2.

Moreover, even when a plaintiff operates a "home-based-business" using a number associated with the home and that business, they too will be unable to prevail on TCPA claims.

11

*Chennette v. Porch.com, Inc.*, 2020 WL 9078129 (D. Idaho, Nov. 2, 2020). In *Chennette*, the plaintiff claimed the number "served a business function in connection with [p]laintiffs' 'home-based-businesses,'" while also asserting it was used for residential purposes. *Id.* at \*2. The court held it was "unreasonable to infer that [p]laintiffs numbers are consumer numbers when the remainder of the complaint directly contradicts that assertion and alleges [p]laintiffs' numbers are cell phones used by contractors." *Id.*

Here, Ortega unquestionably and consistently held his 9663 Number out to the public as a business number associated with one or more of his *six (6) businesses*. (*See* Exhibit 2.) Ortega filed tax documents with the Texas State government identifying the 9663 Number as being associated with at least one of his businesses. (*See* Group Exhibit 3.) Ortega included his 9663 Number in his signature block on emails sent to third parties while engaging in activities on behalf of his businesses. (*See* Group Exhibit 4.) In fact, Ortega's other business associates even told third parties that Ortega could be contacted at the 9663 Number for business purposes. (*See* Group Exhibit 5.)

Likewise, Ortega used apps on the phone associated with the 9663 Number including, but not limited to, using an app to receive calls from VOIP lines expressly created solely for business purposes. (Ex. 1 at 48:20-49:10; 112:7-14; 113:8-15.) Ortega's receipt of VOIP calls on the same phone associated with his 9663 Number further evidences that Ortega did *not* have the necessary expectation of privacy on this cellphone. *See Suttles v. Facebook, Inc.*, 461 F. Supp. 3d 479, 484 (W.D. Tex. May 20, 2020) (TCPA was enacted to protect consumers' privacy interests).

Ortega also communicated with a significant number of third-parties on behalf of his businesses using the 9663 Number. These included tenants, contractors, business partners, and

12

others.  (Group Exhibit 5, and Group Exhibit 6, and Exhibit 2, No. 10.)  These communications consisted of both texts and phone calls.  *Id.*

Ortega also used his 9663 Number to seek and obtain financing on behalf of his businesses on more than twenty occasions.  (Ex. 1 at 305:2-307:24; 309:12-312:8; 312:12-314:5; 314:21-317:5.)  Because Ortega indisputably used his 9663 Number for business purposes since 2015,[7] this 9663 Number is not a "residential number" and never should have been on the DNC list in the first place.  *In the Matter of R. and Regulations Implementing the Tel. Consumer Protect. Act of 1991*, 23 F.C.C. Rcd. 9779, 9785 (F.C.C. 2008) ("National Do-Not-Call Registry applies to 'residential subscribers' and does not preclude calls to businesses.").  Thus, as in *Shelton*, *Bank* and *Chennette*, even if Ortega's purported use of the 9663 Number included some "personal" matters, the overwhelming use of the 9663 Number was for *business* purposes and there can be no liability under the TCPA and DNC regulations for calls to the 9663 Number.  Accordingly, Counts I and II of the SAC fail as a matter of law and Defendants are entitled to summary judgment on this basis.

## II.    Ortega Has Not Suffered an Injury-In-Fact Sufficient to Bring His TCPA Claims.

The TCPA is designed to protect consumers from intrusive invasions of privacy by telemarketers.  *Suttles*, 461 F. Supp. 3d at 484.  But where, as here, a TCPA plaintiff abuses the TCPA as a money-making scheme, akin to a standalone business, that plaintiff is no longer afforded the same statutory protections and, on this basis alone, will be barred from prevailing on claims thereunder.  *Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782, 800 (W.D. Pa. Jun. 24, 2016).

In *Stoops*, plaintiff was a serial filer who used the TCPA as a business enterprise to make money by filing claims.  At her deposition, plaintiff testified she had filed nine suits under the

---

[7]  (*See* Ex. 1, 28:16-17.)

164425.00001/156876420v.1

TCPA and had bought and used cellphones to "manufacture" claims under the TCPA to bring such suits. *Id*. at 798-99. The district court held "[p]laintiffs privacy interests were not violated when she received calls from [d]efendant. Indeed, [d]efendant's calls '[did] not adversely affect the privacy rights that [the TCPA] is intended to protect.' Because [p]laintiff has admitted that her only purpose in using her cell phones is to file TCPA lawsuits, the calls are not 'a nuisance and an invasion of privacy.' Thus, [p]laintiff was not required to 'tend to unwanted calls.'" *Id*. at 800.

Here, Ortega conceded at his deposition he has brought more than ***twenty*** cases under the TCPA since 2024. (Ex. 1 at 215:10-21; 229-252.) Ortega further testified he spends less than five hours each week working on his actual business. (*See id.* at 26:16-27:19; 173:13-14.) Indeed, most of Ortega's time is thus spent prosecuting TCPA claims against various entities and individuals, such as the Defendants. Tellingly, at his deposition, Ortega refused to answer questions about how much money he has received because of the TCPA claims he has filed and continues to file. (*See id.* at 230:8-231:12; 233:1-16; 234:8-15; 235:10-22; 242:3-10; 246:25-242:5; 248:13-20.) As Ortega keeps bringing new TCPA and TTSA lawsuits, however, it is clear he finds such claims profitable.

It is not only the sheer volume of Ortega's TCPA claims which calls into question whether he should be afforded the TCPA's protections. Indeed, Ortega testified that he feigned interest in Sienna's services on the Call to goad Defendants into further communicating with him (*see* Ex. 1 at 201:2-202:4) (in response to Palazzo's statement that "I will shoot you a text, Mark. I'll let you know that everything is on course," Ortega responded "Okay"); *see also id.* at 198:21-22 (Ortega asking Palazzo "[c]an you call me back or send me an e-mail."). Ortega also routinely feigns interest in telemarketing calls to bring claims against the callers under the TCPA. (*Id.* at 205:2-21.) These are not the actions of someone seeking to protect their privacy interests. Rather, these

are the actions of someone seeking paydays in more than twenty active or pending cases because he has no other prospering business interests. (*Id.* at 173:13-14.) As the TCPA was not enacted to operate as a money-making scheme for those seeking to enforce dubious rights, Ortega is not entitled to TCPA protections as he manufactures claims and then uses the law as a business venture in and of itself.

**III.    Sienna Is Entitled to the Safe Habor Provision for Claims Under 47 C.F.R. 64.1200(d) Because it Had a Do-Not-Call Policy in Place Before the Subject Call.**

As this Court anticipated, Sienna has instituted the necessary protections per the TCPA and its enacting regulations to shield itself from liability for communications made to Ortega under the safe harbor rules. (ECF No. 25 at 10) (observing "[i]f Defendant indeed has the requisite procedures, this will be quickly sorted out in discovery and resolved at summary judgment.").

Under 47 C.F.R. 64.1200(d), a defendant is not be liable for making a call to a number listed on the Do-Not-Call Registry if they can demonstrate that the violation is the result of error and that as part of its routine business practice, the defendant meets the following standards: (1) it has prepared and implemented a written procedure to comply with the do-not-call rules; (2) it has trained its personnel and agents in the procedures established pursuant to the do-not-call rules; (3) it has maintained and recorded a list of numbers that it may not contact; (4) it uses a process to prevent telephone solicitations to any telephone number on the Do-Not-Call list; and (5) it uses a process to ensure that it does not sell, rent, lease, purchase or use the do-not-call list for any purpose except for compliance with the TCPA. *See* 47 C.F.R. § 64.1200(c)(2)(i).

As this Court observed in connection with its Motion to Dismiss ruling, "Section 64.1200(d) requires that people or entities making calls for telemarketing purposes to residential numbers have 'instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity.'" (ECF No. 25 at 10 (citing 47 C.F.R. §

64.1200(d))). A telemarketer violates this subsection not by placing the calls themselves, but by failing to have the required procedures in place prior to the initiation of the calls. *Charvat v. GVN Michigan, Inc.*, 561 F.3d 623, 632 (6th Cir. 2009). To allege a violation of subsection (d), a plaintiff must show that the entity placing the calls failed to institute the proper procedures prior to the initiation of the call. *Id.* If a defendant can show that it had instituted the proper procedures, plaintiff's claim under subsection (d) must fail for lacking an essential element of the claim. *Id.*; *Simmons v. Charter Commcn's, Inc.*, 222 F. Supp. 3d 121 (D. Conn. Mar. 30, 2016). In *Simmons*, defendant's written policy was laid out in its contract with the entity making calls on its behalf, and such policy was sufficient to fall under the TCPA's safe harbor protections. *Id.* at 138-41.

Here, it is undisputed Sienna had in place a Do Not Call Policy prior to the Call. (*See* Ex. 7, ¶ 4.) Sienna's Do-Not-Call Policy provides, in relevant part:

> Sienna Marketing & Consulting Inc dba- Creative Capital Solutions abides by the guidelines set out by the National Federal Trade Commission and Local State Guidelines. All Do-Not-Call numbers will be removed from Sienna Marketing & Consulting Inc dba- Creative Capital Solutions calling ad infinitum.

(*See* Ex. 6.) Sienna abides by its Do-Not-Call Policy and trains all its employees and independent contractors who make calls on its behalf on the Do-Not-Call Policy. (*See* Ex. 7 ¶ 10.) As Sienna had the Do-Not-Call Policy in place and had trained Defendant Palazzo on the Do-Not-Call Policy, Defendants are subject to the safe harbor protections of the TCPA and cannot be liable for Plaintiff's TCPA claims. Moreover, "[a]s a small business lender, Sienna Marketing has no interest in contacting individuals to offer them financing on a personal or individual basis. The only entities Sienna Marketing provides financing options to are businesses." (*Id.* ¶ 12.) Thus, if the Call to Ortega really went to a residential number—and again, it did not—then the alleged violation was "the result of error." Based on the above, this Court should now be able to "quickly sort[]" this claim and properly dismiss it on the current, undisputed factual record. (ECF No. 25 at 10.)

16

IV.    **Ortega Provided Consent for the Subject Communications and/or Entered into a Business Relationship Preventing Him from Bringing TCPA and TTSA Claims.**

Ortega expressly consented to the communications from Sienna, and thus, cannot maintain his TCPA or TTSA claims.  "When analyzing a TCPA claim, the threshold issue is whether the defendant made a call 'absent the prior express consent of the telephone call recipient.'"  *Neria v. Dish Network LLC*, 2020 WL 3403074, at \*5 (W.D. Tex. Jun. 19, 2020).  "The Seventh and Ninth Circuit have both held that a consumer consents to receive messages from a caller so long as the messages are related to the reason the number was provided."  *Bradford*, 744 F. Supp. 3d at 762.

"Section 227(c) [of the TCPA] grants a right of private action to '[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection.' *This language is critical, as it does not permit the recovery of damages in a private right of action for Section 227(c) violations arising out of the first call to a person within any 12-month period.* 'No private right of action accrues and a telemarketer is not in violation of [Section 227(c)] unless and until it telephones a party more than once in any twelve-month period after the person has informed the telemarketer that he or she does not want to be called.'"  *Shields v. Gak Inc.*, 2019 WL 1787781, at \*4 (S.D. Tex. Apr. 24, 2019) (emphasis added), *citing Charvat v. ATW, Inc.*, 712 N.E.2d 805, 807 (Ohio App. 1998).

Defendants, through Palazzo, initially contacted Ortega via the Call, which, standing alone, cannot constitute a violation of the TCPA.  Thus, even if the Call itself was unsolicited (which it was not), Ortega is "not permitted" to recover on this "first call" alone.  *See Shields*, 2019 WL 1787781, at \*4.  And the later communications after the Call were solicited and invited by Ortega.

As the undisputed record reveals, during the Call, Ortega expressly requested Sienna call him back and further responded "Okay" when Palazzo said he would send Ortega a text after the

17

completion of the Call.  (*See* Ex. 1 at 198:21-22; 201:2-202:4.)  Ortega's actions constitute express consent for subsequent communications, thus exempting them from the TCPA's protections.

Moreover, under the TTSA, "[a] person may not make a telephone call or use an automatic dial announcing device to make a telephone call for the purpose of making a sale if: … (2) the called person has not consented to the making of such a call to the person calling or using the device or to the business enterprise for which the person is calling or using the device."  V.T.C.A., § 305.001.  Here, Ortega's actions in expressly telling Palazzo to call him back and that it is "Okay" to send a text constitute consent under the TTSA, barring Ortega from recovering on this claim.

> **V.      Defendants are Exempt from the TTSA's Registration Requirement Because they Did not And Could Not Complete the Transfer of Funds or Obtain Provisional Acceptance of a Sale During the Single Call with Ortega, and The Text Message Communications are Not Subject to the TTSA's Registration Requirements.**

Ortega claims Defendants violated the TTSA because they were required to hold a registration certificate to make telephone solicitations into the State of Texas.  *See* V.T.C.A. § 302.101.  But Defendants are exempt from the requirement to hold such registration certificates.

Specifically, the TTSA provides:

> This chapter does not apply to: (1) a person conducting a telephone solicitation who: (A) does not intend to complete or obtain provisional acceptance of a sale during the telephone solicitation…

V.T.C.A. § 302.059(1)(A).  Where call recordings do not reflect any attempt by the caller to complete a sale, but only to generate interest in the product/services being marketed, and for which a sale cannot be completed during the call, the statutory exemptions to the TTSA apply and the caller is not subject to the registration certification provisions. *Atkinson*, 2022 WL 4071998, at \*9.

Here, there can be no dispute Defendants did *not* intend to complete or obtain provisional acceptance of a sale of their respective services during the Call, or on any later texts to Ortega.

A review of the end of the transcript from the Call makes this point clear:

18

Mr. Vincent:    All right. Beautiful. Yeah. So like I said, if you can get that over to me, that plan option, that will be tomorrow - - I'm east coast. Wire cuts off around 5 p.m. I need a couple of hours to have the underwriting team go over it. It's like another 20, 30 minutes. It's about 7 o'clock over here. SO, yeah, if you can get that over to me tonight, I can definitely have options for you. If not, first thing in the morning will be good. I'll work something out for you.

Mr. Ortega:    Okay. Cool.

Mr. Vincent:    (Inaudible.) I just sent you over my contact card, my personal number, (718). Save that. That's my main line of contact. That's my personal line. Questions, anything when you fill out the app, let me know. And, of course, once I receive everything I will shoot you a text, Mark. I'll let you know that everything is on course.

Mr. Ortega:    Okay.

(Ex. 1 at 201:1-202:4.)  As shown, Palazzo requested that Ortega fill out an application, which itself would then need to be approved after an underwriting procedure.  (*See id.* at 199:7-17; 201:1-16.)  Only then could Ortega move forward and accept the business financing services offered by Defendants.  (*See id.*)  In fact, the last communication Defendants had with Ortega was when Palazzo requested Ortega "[s]end me bank statements" so the underwriting process could begin.  (ECF No. 58 at § 35.)  Defendants were thus incapable of completing a sale—or even attempting to obtain provisional acceptance of a sale—during the Call and the subsequent texts.

Lastly, the Texas Attorney General recently entered into a settlement agreement in *Ecommerce Marketers Alliance, Inc. v. Texas*, 1:25-cv-1401-RP, whereby the Texas Attorney General explained it "does not understand SB 140 as extending Chapter 302's [the TTSA] requirements to businesses which operate consent-based marketing programs and, instead, interprets Section 302's definition of 'call' to mean a 'telephone call' as that term is defined by Section 304 of the Texas Business & Commerce Code."  (*See* ECF No. 27 in that matter.)  The State of Texas further explained that "a 'call,' as that term is used in Chapter 302, incorporates Chapter 304's exemption for a 'transmission made to a mobile telephone number as part of an ad-

19

based telephone service, in connection with which the telephone service customer has agreed with the service provider to receive the transmission.' This interpretation of Chapter 302 is mandated by the ordinary meaning of the word 'call,' by context of the overall statutory scheme, and to avoid rendering any portion of SB 140 meaningless." *Id*. Under this consent order, companies sending consent-based *text messages* in the State of Texas are *not required* to register under the TTSA to engage in the texting activities. Thus, there can be no liability for any of the texts sent to Ortega.

As such, Defendants are not in violation of the registration certification provisions of the TTSA and Count IV of the SAC fails as a matter of law.

## CONCLUSION

Based on the foregoing, Defendants are entitled to summary judgment as a matter of law and fact on all claims in the Second Amended Complaint and this case should be dismissed.

Dated: January 30, 2026

Respectfully submitted,

By: */s/ Robert Scott*
Robert Scott
State Bar No. 17911800
Jeffrey N. Rosenthal (admitted *pro hac vice*)
Pennsylvania Bar No. 209334
Scott M. Kaplan (admitted *pro hac vice*)
BLANK ROME LLP
717 Texas Avenue, Suite 1400
Houston, Texas 77002
(713) 228-6601
(713) 228-6605 (fax)
bob.scott@blankrome.com
jeffrey.rosenthal@blankrome.com
scott.kaplan@blankrome.com

**ATTORNEYS FOR DEFENDANTS SIENNA MARKETING & CONSULTING, INC. AND VINCENT PALAZZO**

20

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 30, 2026, a correct copy of this document was filed on the Court's CM/ECF platform, which will provide notice on the below parties and/or attorneys of record.

Mark Anthony Ortega
morteg@utexas.edu
PO Box 702099
San Antonio, TX 78270
Telephone: (210) 744-9663

Plaintiff

By: /s/ *Scott M. Kaplan*
Scott M. Kaplan

164425.00001/156876420v.1